Matter of Ferrelli v State of New York (2024 NY Slip Op 02012)

Matter of Ferrelli v State of New York

2024 NY Slip Op 02012

Decided on April 16, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 16, 2024

Before: Oing, J.P., Moulton, Kapnick, Higgitt, JJ. 

Index No. 31506/22 Appeal No. 787 Case No. 2023-01242 

[*1]In the Matter of Cheryl Ferrelli et al., Petitioners-Appellants, Jason Pashoukos, Petitioner,
v
The State of New York et al., Respondents-Respondents.

Law Offices of Sheldon Karasik, P.C., New York (Sheldon Karasik of counsel), for appellants.
Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York (Bruce Birenboim and Gregory F. Laufer of counsel), for respondents.

Order and judgment (one paper), Supreme Court, Rockland County (Thomas P. Zugibe, J.), entered on or about August 2, 2022, granting the motion of respondents, The New York State Unified Court System (UCS), Hon. Lawrence K. Marks, Nancy J. Barry, and Justin A. Barry (collectively respondents) to dismiss the petition to annul the March 21, 2022 determinations of respondent UCS that petitioners failed to meet the qualifications for employment based on their failure to comply with the UCS vaccine mandate, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
Petitioners concede that the instant proceeding does not challenge respondent UCS's vaccination mandate itself, but only UCS's denial of petitioners' applications for religious exemptions from that mandate. Where, as here, an administrative agency has made a determination without an evidentiary hearing, judicial review of that determination is limited to whether the determination was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974]). An action or determination is arbitrary and capricious when "it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; see also Matter of Ward v City of Long Beach, 20 NY3d 1042, 1043 [2013]; Matter of Pell, 34 NY2d at 231). If the determination is supported by a rational basis, it must be sustained "even if the court concludes that it would have reached a different result than the one reached by the agency" (Matter of Peckham, 12 NY3d at 431; see also Matter of Ward, 20 NY3d at 1043). In this case, petitioners have failed to demonstrate that the decisions by respondents to deny them religious exemptions to its vaccine mandate were arbitrary and capricious.
The first cause of action alleging violation of petitioners' religious freedom was properly dismissed, as the petition fails to show such a violation. Both the United States Constitution and the Constitution of the State of New York guarantee individuals the freedom to practice their religious faith without government interference (see US Const First Amend; NY Const art 1, § 3). But that freedom is not absolute. The Free Exercise Clause of the United States Constitution "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes)'" (Employment Div., Dept. of Human Resources of Oregon v Smith, 494 US 872, 879 [1989], quoting United States v Lee, 455 US 252, 263 n 3 [1982, Stevens, J., concurring]). Where a prohibition on the exercise of religion "is not the object . . . but merely the incidental [*2]effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended" (Smith, 494 US at 878).
Rational basis review applies here, since the vaccine mandate was neutral, both on its face and due to a lack of evidence that it "targets religious conduct for distinctive treatment" (Church of Lukumi Babalu Aye, Inc. v City of Hialeah, 508 US 520, 533-534 [1993]; contra M.A. ex rel. H.R. v Rockland County Dept. of Health, 53 F4th 29, 38 [2d Cir 2022]), and was generally applicable, as the petition makes no "showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct" (Kane v De Blasio, 19 F4th 152, 165 [2d Cir 2021]). Contrary to petitioners' contention, respondents' religious exemption was not "a mechanism for individualized exemptions" that "creates the risk that administrators will use their discretion to exempt individuals from complying with the law for secular reasons, but not religious reasons" (We The Patriots USA, Inc. v Hochul, 17 F4th 266, 288 [2d Cir 2021], [internal quotation marks omitted], cert denied - US -, 142 S Ct 2569 [2022]). "The mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable and subject to strict scrutiny" (id. at 288-289 [internal quotation marks omitted]). Where "a system of individual exemptions exists, the government may not refuse to extend that system to cases of religious hardship without a compelling reason" (Fulton v City of Philadelphia, 593 US 522, 523 [2021], citing Smith, 494 US at 884). Here, there is no evidence that respondents created an "entirely discretionary" system of individualized exemptions that it refused to extend to cases of religious hardship [FN1] (Fulton,593 US at 523). Conducting the appropriate level of review, we find that the vaccine mandate was rationally related to the legitimate goals of slowing the spread of COVID-19 and fully reopening courts to "promote efficient access to justice" (Ferrelli v State of New York Unified Court System, 2022 WL 673863, *6, 2022 US Dist LEXIS 39929, *19 [ND NY, Mar. 7, 2022, 1:22-CV-0068 (LEK/CFH)]; see Kane, 19 F4th at 166). Indeed, "[w]hatever their merits or efficacy, it cannot be said that the State's policies are an irrational means to achieve the legitimate goal of curbing the spread of COVID-19" (Strong v Zucker, 2022 US Dist LEXIS 55438, *13, 2022 WL 896525,*5 [WD NY, Mar. 28, 2002, No. 21-CV-6532L]).
Petitioners' challenges to the religious exemption process as it was applied to them also fail, since three of the four petitioners, Cheryl Ferrelli, Melissa Mainieri, and Sarah Smith, refused to provide complete answers to the supplemental form designed to "distinguish between sincerely held religious beliefs and those beliefs that are either contrived or not religious in nature" (Ferrelli, 2022 [*3]WL 673863, *8, 2022 US Dist LEXIS 39929, *27). Respondents' request for supplemental information was "geared towards developing a factual basis for reaching a conclusion as to whether any particular [petitioner's] beliefs are sincerely held and religious in nature, both of which are permissible inquiries and questions of fact" (Kane v de Blasio, 575 F Supp 3d 435, 442 [SD NY 2021], affd sub nom Keil v City of New York, 2022 US App LEXIS 5791, 2022 WL 619694 [2d Cir, Mar. 3, 2022, No. 21-3043-CV]; see United States v Seeger, 380 US 163, 185 [1965]["(W)hile the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact—a prime consideration to the validity of every claim for exemption . . . ."]). The supplemental form "merely provides factual information about the use of fetal cell lines in creating vaccines, asks applicants questions about their use of other products tested on such cell lines, and provides an opportunity to explain how their beliefs may have changed over time or how their beliefs distinguish the COVID-19 vaccines from other products. This line of questioning does not presuppose the illegitimacy of concerns about use of fetal cell lines; it merely seeks to determine whether such concerns are the applicant's true motivation for seeking an exemption" (Ferrelli, 2022 WL 673863 *8, 2022 US Dist LEXIS 39929, *24 [internal citation omitted]). There is no dispute that the vaccination policy made clear in writing that "[n]o exemption request will be considered unless they are fully completed. . . ." Respondents' "oversight is reasonable and necessary to prevent unsubstantiated religious exemptions from swallowing and undermining the rule of the vaccination mandate itself" (Matter of Ventresca-Cohen v DiFiore, 77 Misc 3d 652, 663 [Sup Ct, Albany County 2022], affd as modified - AD3d -, 2024 NY Slip Op 00664 [3d Dept 2024]). Thus, where petitioners refused to complete the supplemental form, it was not arbitrary and capricious for respondents to deny their requests for religious exemptions.
The remaining petitioner, Marie Zweig, submitted her initial religious exemption application asserting that because of her Christian belief in the sanctity of life, she could not "in good conscience receive or benefit from the use of vaccines that are either tested on or produced using human cell lines derived from voluntarily aborted fetuses." On the supplemental form, Zweig acknowledged that she took over-the-counter medicines and would continue to do so, stating that she had "no knowledge that they were originally developed with the use of cell lines from aborted fetuses and [she] [has] determined that [she] can take them in good conscience" because "they were developed and approved long before they were tested on fetal cell lines." Respondents denied Zweig a religious exemption on the [*4]grounds that she failed to set forth a sincerely held religious belief, since she said she would continue to take over-the-counter medications that use fetal cell lines in research and development despite claiming the use of fetal cell lines as the reason she objects to the COVID-19 vaccines. "Only beliefs rooted in religion are protected by the Free Exercise Clause" and "[t]he determination of what is a 'religious' belief or practice [rather than a secular one] is more often than not a difficult and delicate task. . . . [R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection" (Thomas v Review Bd. Of Indiana Employment Sec. Division, 450 US 707, 713-714 [1981]).
We do not "underestimate the difficulty of distinguishing between religious and secular convictions and in determining whether a professed belief is sincerely held" (Frazee v Illinois Dept. of Employment Sec., 489 US 829, 833 [1989]). While reasonable people may disagree, upon review of Ms. Zweig's application, this Court cannot conclude that respondents' determination to deny her a religious exemption was so irrational as to be arbitrary and capricious (Matter of Ventresca-Cohen v DiFiore, -AD3d-, 2024 NY Slip Op 00664, *3 [3d Dept 2024]).
Under the New York State Constitution, petitioners fail to show that the vaccine mandate, as applied to them, is an unreasonable interference with religious freedom, as they were not forced to stop practicing their religion or get vaccinated (see Catholic Charities of Diocese of Albany v Serio, 7 NY3d 510, 525 [2006], cert denied 552 US 816 [2007]; NY Const, art I, § 3). Contrary to petitioners' assertions, "[s]trict scrutiny is not the right approach to constitutionally-based claims for religious exemptions" pursuant to the New York Free Exercise Clause (Catholic Charities, 7 NY3d at 526). Instead, "we must consider the interest advanced by the [policy] that imposes the burden, and . . . [t]he respective interests must be balanced to determine whether the incidental burdening is justified" (id. at 525, quoting La Rocca v Lane, 37 NY2d 575, 583 [1975]). In doing so, "substantial deference is due the [State], and . . . the [parties] claiming an exemption [bear] the burden of showing that the challenged [policy], as applied to [them], is an unreasonable interference with religious freedom" (id. at 525). Petitioners have not satisfied that burden here.
We note that Supreme Court's reliance on affidavits submitted with the motion to dismiss was appropriate, as the affiant had firsthand knowledge of the decision-making process undertaken by UCS and provided rationale not expressed on the face of respondent's determination (see Matter of Ventresca-Cohen v DiFiore, 77 Misc 3d at 659, citing Matter of Menon v New York State Dept. of Health, 140 AD3d 1428, 1431 [3d Dept 2016]).
Petitioners' second cause of action claiming substantive due process violations of their right to bodily [*5]integrity was also properly dismissed, as they were not forced to undergo any medical treatment or procedure unwillingly (compare Rivers v Katz, 67 NY2d 485, 492-495 [1986]). Similarly, while not alleged in the petition, the questions concerning petitioners' medical history were not "arbitrary intrusions into their medical records," but were instead geared to determine the nature of their objections to vaccination (Braden v Sturges, 189 AD3d 2015, 2016 [3d Dept 2020] [internal quotation marks omitted]; see O'Connor v Pierson, 426 F3d 187, 202 [2d Cir 2005] [government may seek private medical records with "sufficient interest to justify its request"]). Further, "the right of occupational choice" raised by petitioners on appeal "is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession," which is not the case here (Hu v City of New York, 927 F3d 81, 102 [2d Cir 2019] [internal quotation marks and brackets omitted]). Petitioners' assertion that the vaccine mandate violates the unconstitutional conditions doctrine fares no better, as "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional" (We The Patriots, 17 F4th at 293; see Koontz v St. Johns River Water Mgt. Dist., 570 US 595, 604 [2013]).
To the extent that petitioners claim a denial of procedural due process, which is also not alleged in the petition, due process mandates only notice and some opportunity to respond, and petitioners here were given the opportunity to submit proof of vaccination or request religious exemptions (see Matter of O'Reilly v Board of Educ. of the City Sch. Dist. of the City of N.Y., 213 AD3d 560, 568 [1st Dept 2023]; accord Matter of Clarke v Board of Educ. of the City Sch. Dist. of the City of N.Y., 213 AD3d 548, 550-551 [1st Dept 2023]).
The third cause of action asserting that UCS implemented the vaccine mandate without authority was also properly dismissed (see CPLR 7803[2]). Even if petitioners had not conceded that they were not challenging the mandate itself, the State Constitution supports the authority of UCS and its administration to implement the vaccine mandate (see NY Const, art VI, § 28[c]). The record demonstrates that the Chief Judge formed the policy in question, and the vaccine mandate was fundamentally a policy decision relating to the primary mission of UCS (see Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 669 [1990]), specifically, the "defining mission of UCS . . . to provide an accessible forum to every litigant seeking redress of grievances" (Matter of Lippman v Public Empl. Relations Bd., 296 AD2d 199, 204 [3d Dept 2002], lv denied 99 NY2d 503 [2002]).
Petitioners' contention that UCS was required to have a public hearing before implementing the vaccine mandate under [*6]Judiciary Law § 211(d) is unavailing, as it was not raised in the petition (see Matter of Crawford v Kelly, 124 AD2d 1018, 1018 [4th Dept 1986]; Matter of Ball v New York State Dept. of Envtl. Conservation, 35 AD3d 732, 733-734 [2d Dept 2006]).
We have considered petitioners' remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 16, 2024

Footnotes

Footnote 1: The only secular exemption available was the medical exemption, and respondents granted 60% of requests for religious exemptions while only granting about 32% of requests for medical exemptions.