Matter of Heritage Springs Sewer Works, Inc. v Town of Milton (2024 NY Slip Op 50713(U))

[*1]

Matter of Heritage Springs Sewer Works, Inc. v Town of Milton

2024 NY Slip Op 50713(U)

Decided on June 12, 2024

Supreme Court, Saratoga County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 12, 2024
Supreme Court, Saratoga County

In the Matter of the Application of 
 Heritage Springs Sewer Works, Inc., Petitioner-Plaintiff,

against
Town of Milton, Town Board of the Town of Milton, Scott Ostrander, in his Capacity as the Supervisor of the Town of Milton, John Frolish, in his capacity as a councilman of the Town of Milton, and Frank Blaisdell, in his capacity as councilman of the Town of Milton, Respondents-Defendants.

Index No. EF20222579

Walsh Schwartz LLP, Saratoga Springs (Jesse Schwartz of counsel), for petitioner-plaintiff.
Brown, Craig and Hunt, Ballston Spa (James P. Craig of counsel), for respondents-defendants.

Robert J. Muller, J.

On November 16, 2022, this combined proceeding pursuant to, inter alia, CPLR §3001, CPLR §6301 and CPLR article 78 was commenced by Heritage Springs Sewer Works, Inc. (hereinafter HSSW). Petitioner seeks a judgment pursuant to CPLR article 78 annulling Resolution 57-2022, passed by the Milton Town Board on July 27, 2022, eliminating the $2,000.00 connection fee charged to developers to connect to its sewer system. Petitioner asserts the resolution must be set aside as arbitrary, capricious, contrary to law, and not supported by any evidence. Petitioner further claims the resolution is based on wholly erroneous calculations that violate accounting standards, violates prior resolutions, and further violates a court ordered 2012 Stipulation of Settlement between the parties. 
Ordinarily sewage services are provided by a public utility but, during a time of rapid growth in New York, private developers were authorized to build their own sewer systems and operate them for a given period of time before turning them over to the public utilities under the Transportation Corporations Law (hereinafter TCL). These private sewer companies generally [*2]exist until the developers recoup their initial investment and the public utilities catch up with the growing population. 
As relevant here, prior to 1987, public sewer service was not available in certain parts of the Town of Milton (hereinafter Town) in Saratoga County (hereinafter County), which limited development in those areas. (Petition ¶31) In 1987, in an effort to promote growth, the Town consented to the incorporation of Heritage Springs Sewer Works, Inc. as a privately-owned, for-profit sewer works corporation under TCL §116. Petitioner's initial authority to provide sewage disposal services to a 210-unit development, with 1.8 miles of sewer main line, has expanded over the years to encompass approximately 7.3 miles and nearly 1,800 customers. (Petition at ¶ 32, 35-36) According to petitioner, HSSW shareholders invested their own money for the cost and operation of the original 1.8 miles of line and made subsequent investments in later years. (Petition ¶32, 36) 
HSSW generates revenue through two revenue streams. First, HSSW collects an annual service fee from its customers that is used to pay for the cost of repair, maintenance, and operation of the system. The second stream is a one-time connection fee of $2,000/ECU which is paid by the developer at the time of development.[FN1]
Petitioner contends this connection fee is necessary for HSSW shareholders to recoup their initial investment in infrastructure and pay a reasonable annual rate of return (7%) on the capital investment. (Petition ¶40)
Respondents assert HSSW is not entitled to recoup its entire investment or a rate of return or, alternatively, HSSW recouped its initial investment in 2010 along with interest earned thereon and therefore the connection fee is no longer reasonable. On July 27, 2022 respondents passed Resolution 57-2022 which eliminated the connection fee in a 3-2 vote. 

The background and litigious history of the parties is fully set forth in this Court's recent decision in Heritage Springs Sewer Works, Inc. v Boghosian, 76 Misc 3d 653, 654 [Sup Ct, Saratoga County 2022], as well as the Appellate Division, Third Department's decision in Heritage Springs Sewer Works v Boghosian, 61 AD3d 1038[3d Dept 2009]. Petitioner commenced this action claiming the Town Board's adoption of Resolution 57-2022 is in direct contravention of Resolution 5-2011, a court ordered 2012 Stipulation of Settlement between the parties, and Resolution 4-2012 which resolved years of litigation.
In 1998 HSSW entered into a service agreement with a large commercial developer, Thomas and Bruce Boghosian (hereinafter collectively referred to as Boghosians), to provide sewer service to their development. The service agreement charged connection fees and usage fees. In 2006 the Boghosians became displeased with the terms of the agreement and refused to remit payment and thus began nearly two decades of litigation.
Pertinent to the present matter is that while the 2006 lawsuit was pending the Town began a review of petitioner's sewer system to determine the status of the infrastructure and maintenance of the system. In 2008, the Town engaged Garry Robinson, P.E. to produce a report on HSSW's infrastructure (hereinafter the Robinson Report). This report was expanded to include a review of HSSW's finances and connection fees after the Appellate Division, Third Department held, inter alia, connection fees were deemed "rates" under TCL §121 and therefore [*3]must be "fair, reasonable and adequate". (See Heritage Springs Sewer Works v. Boghosian, 61 AD3d 1038, 1042 (3rd Dep't 2009). 
To that end, Kenneth Claflin, CPA, was also engaged to review HSSW's finances and report his findings to the Town (hereinafter the Claflin Report). The result was a three-volume report detailing the physical condition of the sewer system and HSSW's finances. The report was reviewed by the Milton Town Board and its findings were adopted in Resolution No. 5-2011 on January 3, 2011. (Exhibit 3 of Petition)
Resolution No. 5-2011 made the following findings relevant to this action:
"... [The Robinson Report] concluded the territory expansion fee of $2,000.00 currently charged by Heritage Springs Sewer Works, Inc., as well as prior territory expansion fees charged by the Sewer Company since its creation in 1987, to be fair and reasonable, based on both a comparative analysis and recoupment of investment analysis, yet also again not sufficient for the Sewer Company to fully recoup investment as of the date of the Report;[FN2] and
"... [The Robinson Report] found that insufficient physical evidence existed to determine the amount of the initial investment of the Sewer Company, but the Report provided by way of credible affidavits, estimates, and calculations, a reasonable range of what the costs most likely were, ranging from $1,114,819.00 to $1,653,905.00; and
"... the Board, including the Report, has determined that "reasonableness" of fees can be measured and/or determined on a comparison basis, by comparing similar fees charged by similar entities, or by other utilities, and/or, "reasonableness" can be determined on a recoupment of initial capital cost plus a reasonable return basis, both of which methodologies were considered by the Town Engineer ..; and
"... [The Robinson Report], as well as that of Ken Claflin, CPA, conclude, that even using the lowest possible initial investment figure of $1,114,819.00, and a very conservative rate of 7%, there remains approximately $1,333,081.00 yet to be recouped by the Sewer Company, or its principals, as of the date of the Report; and
"WHEREAS, the Board, having reviewed the evidence presented, and considered the [Robinson Report], and all of its attachments, and after hearing his presentation, and upon his expert testimony and opinion, and upon the information and opinions provided by Ken Claflin, . . . Certified Public Accountant, and Edward Romanzo . . . Certified Public Accountant, and after reviewing and considering the evidence and documents provided in opposition, hereby adopts the following Resolutions:
"NOW, THEREFORE, BE IT RESOLVED, the Town Board of the Town of Milton hereby accepts the [Robinson Report] dated December 2010, and the conclusions contained therein, a copy of which is attached hereto and made part thereof [sic] as if fully set forth herein; and it is further . . .
"RESOLVED, based on the information provided the Board, it is determined that [HSSW], or its principals, expended at a minimum the sum of $1,114,819.00 dollars of their own funds on the initial construction of the sewer system, which sum shall for all intents and purposes be considered by the Board as the original cost figure of the system, [*4]unless modified by subsequent Resolution of this Board in the event new and compelling evidence is presented or discovered that would bring that amount into question; and it is further
"RESOLVED, as there has been no credible tangible evidence presented to refute the conclusions and opinions contained within the [Robinson Report], the Town Board hereby finds such Report and its conclusions to be accurate, persuasive, compelling, and supported by the evidence presented and adopts them to the extent they are not inconsistent with the Resolution herein or any other Resolution of the Board; and it is further
"RESOLVED, that the territory expansion fees charged by [HSSW] to potential customers who request to be added to [its] district/territory, in the amount of $2,000.00 per ERU (equivalent residential unit, as defined in the Report), is fair and reasonable based upon both a comparative analysis and a recoupment of investment analysis, and said rate shall be published as the Board approved rate for the territory expansion fee, until such time as a different rate is approved by Board Resolution; and it is further
"RESOLVED, that [HSSW] be directed to submit an annual year end report, each and every year, due no later than May 15th of the following year providing updates as to the amount of territory expansion fees collected, together with a summary of the rate of return and amounts still remaining outstanding on the recoupment of its investment; 
....[Exhibit 3 of Petition, NYSCEF No. 4].
In April 2011 the Boghosians commenced an action against the Town seeking a declaratory judgment that Resolution 5-2011 was void, unlawful, arbitrary and capricious, and therefore must not be implemented. HSSW was joined as a party. Before opposition papers were filed, however, the parties reached a global settlement resolving both that action and the 2006 action. A Stipulation of Settlement (hereinafter 2012 Stipulation) was signed and so-ordered by Supreme Court (Nolan, J.) on February 21, 2012. This Stipulation provides, in pertinent part:
"....HSSW shall continue to provide sewer service to all developer[s] within SCSD [Saratoga County Sewer District] No. 1 territory in the Town, based on terms agreed to by the parties herein, and pursuant to the SCSD Rules and Regulations and the Terms and Conditions set forth in the Resolution attached hereto as Exhibit A." (Exhibit 2 of Petition at p. 4, ¶4).
"The undersigned parties agree to use the SCSD Rules and Regulations and the Terms and Conditions set forth in Exhibit A, as same may be from time to time amended, for all future connection to the Heritage system; and to use the SCSD Scale of Charges when determining and calculating ECUs for each project. All applicants or project sponsors will be required to pay the then current approved connection fee ($2,000 as of 2011) per ECU and the number of ECUs will be determined by the SCSD." (Id. at 5-6, ¶6)
"The undersigned parties agree that the terms of Town of Milton Resolution 5-2011, passed on January 5, 2011, are not changed or altered by this Stipulation, except as set forth in the attached new Resolution. The parties all agree to the terms of the new Resolution, which is attached hereto as Exhibit A, and made a part hereof." (Id. at p. 6, ¶9);
"The undersigned parties agree that they shall not challenge Resolution 5-2011, or the new Resolution, in any [d]eclaratory [j]udgment [a]ction, [a]rticle 78 proceeding, or otherwise. (Id. at p. 8, ¶19)
"This Stipulation shall not take effect unless and until the new Resolution attached as Exhibit A, is adopted by the Town Board of the Town of Milton."
(Id. at p. 8, ¶21)
The Stipulation was signed by the Boghosians, HSSW and Daniel Lewza as Supervisor of the Town of Milton on February 15, 2012 in conjunction with the adoption of Resolution 4-2012 attached as Exhibit A to the court ordered Stipulation. This amended Resolution 5-2011 to the extent that HSSW was now required to comply with certain terms and conditions, but it did not disturb the findings set forth in Resolution 5-2011. In this regard, Resolution 4-2012 provides as follows:
"Resolved, that all connection fees charged by the Sewer Company shall be based upon the Sewer District's calculation of ECU's (equivalent connection unit) for each project or establishment in accordance with Sewer District Scale of Charges and its Rules and Regulations"; (Resolution 4-2012, Exhibit 10 of Petition, at p. 3]. "[T]he current Town Board has no intention of amending this Resolution in the future with respect to fundamental terms herein that provide for global settlement of the above referenced cases and for open access to sanitary sewer service in Town as provided for herein, and in the Stipulation of Settlement, however, the Town Board recognizes that such things as Sewer Company rates, changes in engineering standards and practices, requirements for all hookups, or expansion in the Approved Territory may require some amendments in the future, and any such amendment as enumerated above, shall in the exclusive determination of the Town of Milton Town Board, preserve the integrity of the Stipulation of Settlement and go through the process of an agreement between the Town Board and the Sewer Company, public notice, and a public hearing " (emphasis added) (Id. at p. 4). "These Terms and Conditions may only be amended by approval of the Town Board of the Town of Milton after public notice and public hearing. The Town of Milton shall not amend these Terms and Conditions without first obtaining the consent of the Sewer Company. Any such amendments must at all times be in keeping with the terms of global settlement accomplished herein and in the Stipulation, and with the concept of open access to sanitary sewer services in the Town of Milton." (emphasis added), (Id. at p. 9)
HSSW complied with the annual reporting requirements contained in Resolution 5-2011 and submitted annual year-end reports which provided updates as to the amount of connection fees collected, together with a summary of the rate of return and amounts that remained outstanding on the recoupment of its investment. These reports were filed from 2012 through 2022. In response to receiving these yearly reports, on June 4, 2014, the Town's newly commissioned Sewer Committee reported to the Town Board that:
The committee recommended additional detail on the recoupment of investment by Heritage Springs. Heritage Springs has agreed to include the spreadsheet prepared by Ken Claflin, CPA and previously endorsed by the Town in future annual reports. Committee reviewed the spread sheet attached to the most recent annual report supplied by Heritage, and being consistent with past information provided, it confirms that all territory expansion fees/connection charges collected by Heritage since Heritage's inception have been applied appropriately to the recoupment of the initial investment. (Exhibit 12 of Petition, p. 2)
The Town Board approved and adopted these recommendations on June 9, 2014 and, [*5]from then on, HSSW's year-end reports included a chart which calculated the return on investment and outstanding capital investment balance, using the Standard Approved Method. Petitioner contends, "in accordance with good and accepted accounting principles, Claflin consistently calculated the seven (7%) annual return using simple interest based on the capital investment principal remaining due and outstanding. The [c]onnection [f]ee revenue received by HSSW was applied first to pay the annual rate of return due to HSSW. In years when the rate of return (including any accrued balance) has been paid in full, then the excess [connection] [f]ee revenue is used for recoupment of capital investment." (Petition p. 19, ¶63) The Court finds this methodology — to wit, paying accrued return on investment (interest) first and reducing principal only once interest is paid in full — complies with good and accepted accounting principles and is consistent with standard business practices and loan arrangements.
2020-2022 RATE REVIEW
TCL §121, requires "[r]ates shall be reviewable at intervals of not more than five years or anytime by petition of the corporation or motion by the local governing body on written notice after a period of ninety days." In compliance with that statute, on December 18, 2019 the Town Board passed Resolution No. 40-2019 setting a public rate hearing for March 4, 2020.[FN3]
Thus, a two- and one-half-year rate review began. 
By Resolution 25-2020 the Board cancelled the March 24, 2020 hearing and rescheduled it for April 22, 2020. A reason stated for the cancellation was the untimely resignation and replacement of the town comptroller as the Board believed "the Comptroller's review, opinions, and comments are an essential and integral part of the [rate] review process".[FN4]
 [NYSCEF No. 104 p. 20] Subsequently, this hearing was cancelled and ultimately rescheduled for July 22, 2020.[FN5]
[NYSCEF No. 104, p. 23]
Throughout the rate review process the Boghosians consistently made numerous statements against HSSW and challenged the findings in Resolution 5-2011. Thomas Boghosian commented at the July 22, 2020 hearing:
"The situation in its simplest form, [HSSW], the entity has zero investment in infrastructure in the Town of Milton."
"This Board made a very very bad decision and an erroneous decision based on Robinson and Claflin's haphazard report."
"Yet you guys turn around and certify erroneously that they did have a million one in the ground and that they are entitled to a 7 percent annuity for the rest of their lives. . . . And according to the audit of [HSSW's] financial records, it has no investment and that investment is what you base your connection rate on which is said repeatedly by Robinson and Claflin that they need to get their investment back. They need to get paid back their million dollars that they put in the ground. [HSSW] has no investment in that sewer system and thus no investment to recover."[FN6]
Bruce Boghosian also spoke at the July 22, 2020 hearing, stating in pertinent part:
"It is our belief that the Town did make a mistake in the record by establishing a rate based upon an alleged investment of $1,114,000 at the 2012 rate hearing which was the last rate hearing eight years ago. This is a new rate hearing, and the Town needs to start at zero and establish the investment to base the new rate on."
"[T]here is no evidence of this investment by [HSSW], rather it is a number based upon a fabricated estimation agreed to by the Town. This so-called investment is the basis of the connection rate of $2,000 the Town approved with absolutely no evidence of cost. Not a single receipt for any piece of pipe, nothing. That just doesn't seem possible."
"The second point regarding fairness of the rate deals with the KVA apartments now known as Winners' Circle. This development, and we all know where it is, contains approximately 700 units maybe more or less, I am using an even number. According to [SCSD] regulations, one apartment equals one unit or one ERU. According to [HSSW's] contract with KVA, it states that KVA will pay $1,500 per ERU and, you're right, we are not going to mess with that contract, it says $1,500 per ERU. But, to date, there is no evidence this has been paid. Its simple math folks, seven hundred times fifteen hundred is $1,050,000. There is no record of that in any of the voluminous reports Mr. Walsh referred to earlier. The Board needs to address this issue and demand this amount be paid according to the Town's resolution and correct this inequity. The bottom line once again is that it appears that the public is subsidizing private development through payment of sewer fees. In this particular case, the owner of KVA apartments and the owner of the sewer system appear to be the same individual. And according to the annual reports of [HSSW], the amount has not been collected."
"Lastly, and this hasn't been brought up, but [HSSW], and I guess they're going to regurgitate Mr. Claflin's report that they have $1,114,000 of investment. That's what they represented to the Town. Is that correct that everyone understands that? $1,114,000 — that's what they say their asset is worth. However, and that was, that was per, I think . . . the 2011 resolution, if I'm correct. The 2010 tax return which you have a copy of, states total assets, total assets of the company — $1,250. My question, I guess it's going to be my second question is, are they misrepresenting the facts to you or are they misrepresenting the facts to the IRS? You can't say we have a million dollars in assets and then on your tax return you have $1,250. Because if they're . . . misrepresenting to these guys, there are serious penalties and potential jail time. I don't know what the [*6]problem is if they misrepresent to you, but it needs to be looked into — it needs to be taken care of."[FN7]
These are the same arguments and sentiments set forth in the preceding actions with the Town Board and rejected as evidenced by resolution 5-2011.
The Boghosians retained a certified public accountant (CPA Kuchis) and counsel, both of whom also spoke at the July 20 hearing and provided various written submissions reiterating the arguments previously made by the Boghosians themselves. [see Heritage Hills Sewage Works Corp. v Town Bd. of Somers, 189 AD2d 816, 817 [2d Dept 1993], Court found, inter alia, the board erred by allowing its decision to be influenced by the outrage of customers and their unsubstantiated claims].
The Boghosians also had a telephone conversation with two respondents— John Frolish and Frank Blaisdell — on December 9, 2020. This conversation was recorded by Town Board members — unbeknownst to the Boghosians — and subsequently obtained by HSSW in a FOIL request. The content of that discussion is fully set forth in Heritage Springs Sewer Works, Inc. v Boghosian, 76 Misc 3d 653, 654 [Sup Ct, Saratoga County 2022].
These comments prompted HSSW to file motions following the 2006 and 2011 actions seeking an order finding the Boghosians in civil contempt for violating the court ordered Stipulation of Settlement. On July 26, 2022, this Court issued an Amended Decision and Order which held, inter alia, the Stipulation of Settlement was a lawful court order between the Town, HSSW and the Boghosians and further found the Boghosians in civil contempt for violating the terms of the Stipulation (Id.)
The next day, the Town Board passed Resolution 57-2022.
DISCUSSION:
Petitioner asserts respondents' adoption of Resolution 57-2022 was in excess of its jurisdiction and arbitrary, capricious, contrary to law and not supported by any evidence. [See CPLR §7803(2) and (3)] As such, HSSW demands judgment pursuant to CPLR §7803 and §7806 (i) annulling Resolution 57-2022 in its entirety, (ii) declaring that the connection fee of $2,000/ECU remains due and payable to HSSW until such time as HSSW and respondents agree to modify or adjust the same, (iii) declaring that pursuant to a standard approved methodology connection fee revenue received by HSSW was to be used first to pay the reasonable annual rate of return in full, and then to pay down principal (capital investment), as well as a money judgment.
Preliminarily, while not disputed by respondents, the Court finds petitioners challenge to Resolution 57-2022 is properly brought under CPLR article 78. "Where, as here, governmental activity is being challenged, the immediate inquiry is whether the challenge could have been advanced in a CPLR article 78 proceeding". (Spinney at Pond View, LLC v Town Bd. of the Town of Schodack, 99 AD3d 1088, 1089 [2012] [internal quotation marks and citation omitted]. Here, the underlying complaint of petitioner centers upon the respondent's elimination of connection fees charged to developers to hook into their sewer system. Such rate-fixing or fee-setting activities are properly viewed as "quasi-legislative act[s]" (Matter of Valentino v County of Tompkins, 45 AD3d 1235, 1236, 846 NYS2d 745 [2007]) and, as such, are reviewable in the [*7]context of a CPLR article 78 proceeding. (Spinney at Pond View, LLC v Town Bd. of The Town of Schodack, 99 AD3d 1088 [3d Dept 2012]). The Court further finds the action was properly commenced within the four month statute of limitations. (CPLR §217)
 Respondents' action was in excess of jurisdiction and contrary to law.
Transportation Corporations Law requires a town's periodic review of rates charged by a sewer company at intervals not less than every five years. Pursuant to Resolution 5-2011, the Town received annual reports from HSSW, and a formal rate review was undertaken beginning in 2019 and culminated with the passage of Resolution 57-2022. TCL §121 requires:
"A sewage-works corporation shall make provisions for the collection, treatment and disposal of sewage at fair, reasonable and adequate rates agreed to between the corporation and the local governing body ." (emphasis added)
Petitioner submits, because the parties did not agree to the elimination of the connection fees, respondents acted in contravention of TCL §121 and in excess of their statutory authority. 

Respondents argue the rates to be agreed upon by the parties under the statute only apply to annual fees and connection fees were not contemplated. (Answer ¶9) The statute, however, does not make such distinction and this argument is contrary to the holding in Heritage Springs Sewer Works v. Boghosian, 61 AD3d 1038, 1042 (3rd Dept. 2009) which established that the connection fee is a "rate" and subject to the provisions of TCL §121. Furthermore, respondents' argument that connection fees are not to be considered "rates" under TCL §121 rings hollow as their own Resolution 5-2011 acknowledges territory expansion fees (a/k/a connection fees) are to be considered "rates". (Exhibit 10 of Petition, p.10, ¶14)
Alternatively, respondents contend it is against public policy and beyond their authority to contractually require the parties agree to a rate that is fair, reasonable, and adequate because setting such rates is a non-delegable duty of the Town Board. Respondents' reliance upon Brown v Supreme Ct. I. O. F., 176 NY 132 [1903] and Sternaman v Metro. Life Ins. Co., 170 NY 13 [1902] is misplaced as these cases involved contracts that violated law or public policy. Here, the parties' 2012 Stipulation and Resolutions 5-2011 and 4-2012 required agreement between the parties and comports with TCL §121.
The text of a statute is the best evidence of legislative intent and, "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 60, 990 NE2d 114, 967 NYS2d 876 [2013] [internal quotation marks, brackets and citations omitted]; see Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660, 860 NE2d 705, 827 NYS2d 88 [2006]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583, 696 NE2d 978, 673 NYS2d 966 [1998]); as cited in Matter of Retired Pub. Empls. Assn., Inc. v Cuomo, 123 AD3d 92, 94-95 [3d Dept 2014]).
An unambiguous statute must be applied in accordance with its express terms. Courts should not add restrictions or limitations where none exist, nor should they interpret what has no need of interpretation. (Marcus Assoc., Inc. v Huntington, 45 NY2d 501, 504 [1978]) Even though respondents submit they are permitted unilaterally to set reasonable rates, the plain reading of the statute requires those rates be agreed upon by the corporation and the local governing body. (TCL §121) 
The Court finds the language of TCL §121 is clear and unambiguous, and, consistent with this analysis, concludes respondents acted in excess of its jurisdiction and contrary to law when it eliminated the connection fee without agreement from HSSW.

Respondents' determination is arbitrary and capricious
Next, petitioner argues that the passage of Resolution 57-2022 was arbitrary and capricious because it was not supported by any expert analysis, opinion, or report, was based upon incorrect figures, was inconsistent with good and accepted principles of accounting, was entirely inconsistent with the findings set forth in Resolution 5-2011, and is inconsistent with the financial reports submitted and accepted by the Town from 2010 through 2022.
The judicial review of an administrative determination is limited to the grounds invoked by the agency. (Lindemann v. American Horse Shows Assn., 222 AD2d 248, 250 [1st Dept. 1995]). The reviewing court may not substitute its judgment for that of the agency's determination but must decide if the agency's decision is supported on any reasonable basis. (Matter of Clancy-Cullen Storage Co. v. Board of Elections of the City of New York, 98 AD2d 635,636 [1st Dept. 1983]). Once the court finds a rational basis exists for the agency's determination, its review is ended. (Matter of Sullivan County Harness Racing Association, Inc. v. Glasser, 30 NY2d 269 [1972]). The court may only declare an agency's determination 'arbitrary and capricious' if it finds that there is no rational basis for the determination. (Matter of Pell v. Board of Education, 34 NY2d 222, 231 [1974]) see also Matter of Lake George Assn. v NYS Adirondack Park Agency, — AD3d —, 2024 NY Slip Op 02356 [2024])
The source of the disagreement between the parties surrounding connection fees stems from whether or not HSSW shareholders are entitled to recover their capital investment and a rate of return and, if they are, what method of accounting should be used. 
Initially, respondents claim petitioner's connection fees are not reasonable because they were only given six (6) years to recoup "some" of their original investment by Saratoga County and it was never intended that they receive a reasonable return on their investment, and further, this was simply a "gift" from the Town. (Answer ¶5, 16) These arguments are an inaccurate account of this record and contrary to the Town's resolutions.
According to the minutes from the May 27, 1987 SCSD commission meeting, an update on a Town development was given by James Mitchell, of Environmental Design Partnership, who stated, HSSW "wanted to own [the sewer line] for a few years to recoup some construction costs". However, this is not an agreement, or a reflection of Saratoga County's intent to limit HSSW's recovery on investment. The only action approved at that meeting was to allow HSSW to continue to own a portion of the sewer system for a "minimum of six years". (Exhibit 6 of Petition). Respondents suggest that SCSD intended HSSW be entitled to recoup only what could be collected toward its investment during those six years. This position is contradicted by respondents' Resolution 5-2011, adopted 24 years after this SCSD meeting, which states:
"Resolved, [HSSW] be allowed to continue its operation indefinitely in order to continue to recoup its initial investment plus receive a rate of return on its investment equal to seven percent (7%), or until further [r]esolution of the [b]oard". (NYSCEF No. 4 p. 9)
This is further contradicted by Resolution 57-2022 that found the "hook-up rate was initially and still remains limited specifically for the purpose of allowing [HSSW] to recoup its initial investment". (Exhibit 1 of Petition, p.1). In addition to the clear language of these resolutions, case law further recognizes that petitioner is not only "entitled to rates which are 'fair, reasonable and adequate' (TCL §121) [but] may not be denied a reasonable rate of return on its investment" (Huff v C.K. Sanitary Sys., 260 AD2d 892, 897). Bennett Rd. Sewer Co. v Town [*8]Bd., 273 AD2d 902, 903 [4th Dept 2000]).
The Court finds respondents' suggestion that connection fees are not reasonable because HSSW is not entitled to recover their initial capital, or a rate of return is not supported by the record or applicable case law.
Next, petitioner contends respondents' adoption of Resolution 57-2022 which unilaterally determined HSSW's connection fees were no longer reasonable necessitating their elimination, was arbitrary and capricious.
It is abundantly clear the Town considered and relied heavily upon the comprehensive reports and expertise of Engineer Garry Robinson, and CPA Kenneth Claflin in the adoption of Resolution 5-2011, finding their reports to be accurate, persuasive, compelling and supported by the evidence presented, which in turn resulted in a finding by the Town that the $2,000/ECU connection fee was fair, reasonable and adequate. (Resolution 5-2011 at p. 3) 
As relevant here, CPA Claflin's scope of analysis in his 2020 report encompassed three tasks, a determination of whether the rate of return should be credited annually, a determination of a basis for a reasonable rate of return for capital investment and, based on the information and evidence gathered, a determination of whether the current connection fee is fair, reasonable, and adequate. (2020 Claflin Report, NYSCEF No. 6 p. 5).
CPA Claflin's report was conducted, and his review completed, in accordance with the attestation standards established by the American Institute of Certified Public Accountants. (Id.) Claflin's report states in part:
"Task -A) Determine if the rate of return should be credited annually
Apparently there has been some question as to whether the rate of return should be credited once and not annually. As indicated in the rate methodology section of this report, (page 6), a fair rate is determined by dividing the estimated annual revenue requirement, which includes the allowed rate of return, by the number of users. Clearly the rate of return is meant to be an annual rate of return as the allowed rate of return is included in the rate calculation. Furthermore, it makes no logical sense for the return on investment to be anything but annual. Why would an investor choose to invest $1 million over 32 years ago for a one-time 7% or $70,000 return when he could put the same investment in a bank and earn interest annually for 32 years and more than triple his investment?
Task -B) 
Determine a basis for a reasonable rate of return for capital investment.
In our 2009 report we noted the following:
We are not aware of any published allowable rate for sewer systems. As such we attempted to determine the rates utilized by other utilities to determine a reasonable rate. We contacted the New York State Public Service Commission. They provided us with their estimate of pre-tax cost of capital for water utilities (a business similar to sewer, which is not regulated by the PSC) which ranged from 14.0% in 1988 to 10.3% in 2009. Additionally, various searches on the internet noted allowable rates of return to large gas and electric companies of 9.25% to 9.6% per year in years ranging from 2002 to 2006. In the current period we noted that the State of New York Public Service Commission Case 18-W-0670 states "As of June 30, 2019, the pre-tax rate of return range for small water companies is between 8.0% and 9.0%."
Based on that information we conclude that a 7% annual rate of return is reasonable.
Task - C) 
Based on the information available and gathered, determine whether the current [*9]connection fee is fair, reasonable and adequate.
We calculated the rates in two different ways: 1) Connection Fee Only
From 1988 (inception) to 2019, HSSW has reported connection fee revenue of $1,657,027. Based on the assumptions , including a 7% allowable rate of return, connection fee income could have totaled $3,152,338 and the fees would have been fair, reasonable and adequate. In other words, the territory expansion fees charged during the 32-year period could have been $1,495,311 higher and connection fees would still have been considered fair, reasonable and adequate. (Table of calculations omitted)
It should be noted that the allowable rate of return of $2,037,519 when divided by the 32 years of operation would average $63,672 per year. It should also be noted, that this rate of return was never achieved, and the actual rate of return was $429,321 or $13,416 per year.
2) Total Sewer Fees (Operating and Maintenance Fees and Connection Fees)
From 1988 (inception) to 2019, HSSW has reported taxable income of $429,321. Based on the assumptions , including a 7% allowable rate of return, income could have totaled $2,037,519 and total sewer fees would have been fair, reasonable and adequate. In other words, the fees charged during the 32-year period could have been $1,344,248 higher and the total sewer fees would still have been considered fair, reasonable and adequate." (Table of calculations omitted) (Id. at p. 7-8)
HSSW's experts explain that the connection fee revenue is intended to first pay the annual return on investment and then any balance is applied to recoupment of the capital investment. (Claflin Aff'd ¶8, NYSCEF No. 32, p. 3)[FN8]
. This is the method used in the Claflin Report to support the adoption of Resolution 5-2011 as well as HSSW's annual reports submitted from 2012 through 2019 and the 2020 report prepared by Claflin to support the continuation of connection fees. (Id. at p. 12-16). Under this method petitioner had not recouped their investment or return on investment in 2011 as memorialized in Resolution 5-2011 which states:
WHEREAS, the [Robinson Report] as well as the [Claflin Report] conclude that even using the lowest possible initial investment figure of $1,114,819.00 and a very conservative rate of 7%, there remains approximately $1,333,081.00 yet to be recouped by the Sewer Company, or its principals as of the date of this Report [Resolution 5-2011, NYSCEF No.2, p.3][FN9]
Respondents' Resolution 57-2022, however, contradicts and negates these prior findings as well as HSSW's annual reports from 2012-2022, when it declares the "initial principal [*10]investment of [HSSW] in the amount of $1,114,819.00 has been fully recouped as of 2011".[FN10]
(Id.)This resolution also changed the method of accounting utilized and accepted by the Town:
" ...that the interest allowed and allocated to the principal investment, as set forth in Resolution 5 of 2011, and as reconciled between a straight interest calculation and the figure set in the original Robinson Report, shall be clarified to be interest from 1988 accruing in a separate column (for repayment after principal) and paid back only after the original initial investment principal is recouped from the hook-up charges collected, which said interest amount has, as of 2021, been or is close to having been fully collected from hook-up fees charged and collected through the year 2021". [Id. at p.2-3]
According to CPA Claflin, this provision effectively changes the method of accounting utilized by HSSW for more than 30 years and does so retroactively. [Claflin Aff'd ¶37, NYSCEF No. 32 p. 12).
"A [town] determination is accorded great deference so long as it has a rational basis and is supported by substantial evidence". (Matter of Edscott Realty Corp v. Town of Lake George Planning Board, 134 AD3d 1288 (3d Dept 2015). Where substantial evidence is present, a reviewing court may not substitute its own judgment for that of the approving board (Matter of Citizens Accord, Inc. v. Town Board of the Town of Rochester, 192 AD2d 985 [3d Dept 1993]). "[R]ationality is what is reviewed under . . . the substantial evidence rule" and is limited to whether the determination was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974] as cited in Matter of Ferrelli v State of NY, — AD3d —, 2024 NY Slip Op 02012, *1 [2024]); substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180, 379 NE2d 1183, 408 NYS2d 54 [1978]). If the determination is supported by a rational basis, it must be sustained "even if the court concludes that it would have reached a different result than the one reached by the agency" (Matter of Peckham, 12 NY3d at 431; see also Matter of Ward, 20 NY3d at 1043).
When reviewing respondents' determinations, the standard of review for this Court is whether there is relevant proof to support the Town's conclusion.
In this regard respondents refer generally to the voluminous record of over 5,000 pages and specifically to the report/affidavit of Alex Kuchis, a certified public accountant retained by the non-party Boghosians, and the calculations of Councilmember Frolish. Affidavits from Councilmembers Blaisdell and Frolish, and Supervisor Ostrander, were also submitted for this Court's consideration in adopting Resolution 57-2022. Each affidavit contains similar explanations that the Town Board recently resolved to take a hard look at the connection fees charged by petitioner because they felt the collection of those fees for more than "35 years far surpasses what was ever contemplated or intended by the Town or County " (Blaisdell Aff'd ¶3, NYSCEF No. 107 p. 2). 
Respondent Blaisdell has been on the Board for more than seventeen years and believed the connection fee charges painted the Town in a "negative light 
...., and that as soon as they had reached the limit of their intended purpose, they would no longer be a reasonable charge, and must end". (Id.) Blaisdell stated,
"Our Resolution #57-2022 was the conclusion of over two years of investigations, discussions with the Town Engineer, discussions with the Town Comptroller, discussions with the Town Attorney, discussions with Bruce and Tom Boghosian, contractors, discussions with officials at the Sewer Company, letters from Attorneys on both sides, letters and reports from Certified Public Accountants, review of tax returns, review of Heritage's yearly reports, calculations provided by various Board members, review of [a]ffidavits and [d]eposition transcripts and prior history and litigation, as well as the review of thousands of other documents and papers both in file (sic) and provided. For me, it was also the conclusion of a decade of closely watching and monitoring the hook-up fee returns in the matter." (Id. ¶4). Blaisdell was on the Town Board when resolution 5-2011 was passed and submits that, " .when the reasonable return figure was created and applied and the Board did not [at] any time agree to such. In fact, the Board at that time believed [HSSW] ha[d] all but collected its entire initial investment and was inclined to let [HSSW] have some interest to encourage these types of investments in the future." Blaisdell also submits, "that [HSSW's] original investment, for which they requested hook-up fees be allowed, was collected on or around the year 2010". The basis for this position is the figures and calculations of Councilmember Frolish. [Id. ¶8b]. 
Blaisdell states HSSW was entitled to recoup only some of their investment. He then finds HSSW recouped its full investment plus interest prior to the passage of Resolution 5-2011. Not only is Blaisdell's 2022 affidavit conflicted internally, but it is also contrary to his 2011 affidavit in which he stated:
"Our Resolution 5-2011 is supported by testimony and documentation from Engineers, Contractors and Accountants; all who are experts in their fields" (Exhibit 9 of Petition ¶11, NYSCEF No. 10)
"[T]he final report (2010 Robinson Claflin Report) found both the yearly customer collection fees charged by HSSW, as well as the territory expansion fees, to be fair and reasonable. (Id. ¶13)
"The report also looked at the fees on a cost/recoupment basis, where the cost to build and construct the infrastructure was determined as closely as could be, a reasonable rate of return was projected based upon the initial investment, and the amount recouped to date was determined. All were found to be reasonable. ( Id. ¶15)
No credible evidence was provided to the [b]oard, nor could the [b]oard find such, that refuted the conclusions found in the [Robinson] report." (Id. ¶18)
Respondent Ostrander mirrors many of these same sentiments. Specifically, he states that he has "analyzed the documents and proof provided ..... [and] based on the record, several [b]oard members calculated the hook-up fee collection from 1988-2010, and found that by the end of 2010, the recoupment of the initial investment of [HSSW] was exceeded by the sum of $7,458.00". (Ostrander Aff'd ¶6, NYSCEF No. 107 p. 8-9). He bases this conclusion on the chart prepared by Councilmember Frolish. (Id.) 
Similarly, Respondent Frolish mimics the facts set forth in Respondent Ostrander and Blaisdell's affidavits and further explains that his experience with budgets and accounting stem [*11]from five years spent on the Town of Milton Budget Committee, being a Fire Commissioner and Chairman of the Board of Fire Commissioners, as well as owning and operating a business for 36 years. [Frolish Aff'd ¶3, NYSCEF No. 107 p. 14-19) ] Frolish states, "Based on the record, I personally calculated the hook-up fee collection from 1988-2010, (using various standard amortization models) and found that by the end of 2010, the recoupment of the initial investment of [HSSW], was exceeded by the sum of $7,458.00". [Id. ¶6]. Frolish continues, "...... I have also found .....[HSSW] collected an excess of $86,691.59". (Id.). Respondent Frolish attaches a chart with these calculations and further asserts "there is no question [HSSW] has fully recouped what was gifted to them 
..... " (Id.)[FN11]

Respondents provide an affidavit from CPA Alex Kuchis who was again retained by the non-party Boghosians. According to Kuchis, the petitioner has no fixed assets upon which to recoup their investment. The basis for this determination is tax returns which did not identify any depreciable assets and a statement made by an HSSW representative at the July 22, 2020 hearing that, "the sewer system was paid for by the principals of the sewer company, okay and they did expense the cost up front for tax return purposes". This position is in conflict with the findings in Resolutions 57-2022 and 5-2011 that specifically state HSSW is entitled to recoup the cost of investment. Additionally, this is also the same argument advanced prior to the adoption of Resolution 5-2011 and disregarded by the Town.
Each of the council members' affidavits point to Respondent Frolish's and, or, their own, calculations for the determination that HSSW has fully recouped their initial investments and a reasonable return. While the Court does not discount the value of 36 years of business experience, the Town's reliance on lay calculations of a complex accounting principal is problematic. For example, in explaining how the conclusion was reached, Frolish indicates he used "various standard amortization models" without further description of what those models were. (Frolish Aff'd ¶6, NYSCEF No 107 p. 15). 
It is perplexing how respondents found that "the initial principal investment of [HSSW] in the amount of $1,114,819.00 has been fully recouped as of 2011" when the 2011 Town Board resolved that "there remains approximately $1,333,081.00 yet to be recouped" and the 2014 Town Board and sewer committee acknowledged "[HSSW] may never fully recoup their initial investment". The Town nevertheless resolved:
" ....that the interest allowed and allocated to the principal investment as set forth in Resolution #5 of 2011, and as reconciled between a straight interest calculation and the figure set in the original Robinson Report, shall be clarified to be interest from 1988 accruing in a separate column (for repayment after principal) and paid back only after the original initial investment principal is recouped from the hook-up charges collected, which said interest amount has, as of 2021, been or is close to having been fully collected from hook-up fees charged and collected through the year 2021." (Resolution 57-2022, NYSCEF No. 2 p. 4-5)
What is also disconcerting to the Court are the vague and unsupported assertions [*12]contained in the conclusory statements of Resolution 57-2022 in which the Town has retroactively (commencing in 1988) determined that all revenue from connection fees must be first applied to pay down the principal, and once the entire principal is paid, then the revenue is applied to any accrued interest.Equally elusive, respondents have eliminated connection fees on the basis that HSSW has fully recovered their investment and return on investment, yet respondents permit HSSW to continue collecting connection fees on eleven (11) developments identified in Resolution 57-2022. 
By virtue of these inconsistencies, the Court is informed by Claflin's observation that he "was not aware of any loan structure, business arrangement or accounting practice where the annual rate of return is received only after the principal is paid". (Claflin Aff'd ¶39). Upon careful review of the record the Court can find no rational basis for the respondents' determination that HSSW's connection fees are not fair, reasonable, or adequate and therefore finds respondents' determination to be arbitrary and capricious.

Contempt of Court
Petitioner asserts respondents must be found in contempt of court for violating the court ordered 2012 Stipulation of Settlement. HSSW does not suggest that respondents are without authority to review and adjust its rates but contend the Town's manipulation of previously employed accounting methods retroactive to 1988, resulting in the elimination of connection fees, violates the Order. Respondents counter any attempt to hold them in contempt would be to punish them for doing what they are required and obligated by law to do. 
"To sustain a finding of civil contempt for a violation of a court order, a [party] must show by clear and convincing evidence that there was a lawful court order in effect that clearly expressed an unequivocal mandate, that the person who allegedly violated the order had actual knowledge of its terms, and that his or her actions or failure to act defeated, impaired, impeded or prejudiced a right of the moving party". (Matter of Tiffany W. v James X., 196 AD3d 787, 794 [2021], quoting Matter of Wesko v Hollenbeck, 149 AD3d 1175, 1175-1176 [2017] [internal quotation marks and citations omitted]).
This Court has previously found that the so-ordered Stipulation constitutes a lawful court order, and respondents do not dispute this, nor is it disputed they had actual knowledge of this order. (see Heritage Springs Sewer Works, Inc. v Boghosian, 76 Misc 3d 653, 654 [Sup Ct, Saratoga County 2022]). 
Specifically, petitioner claims the "sudden jettisoning by the Town of the Standard Approved Methodology in favor of the Frolish Method" which resulted in the elimination of the connection fee is in violation of the Exhibit A of the Stipulation (Resolution 4-2012) that: "[t]he Town of Milton shall not amend these Terms and Conditions without first obtaining the consent of the Sewer Company." (Petition ¶ 118, 119; Resolution 4-2012 ¶10).
While the "Terms and Conditions" of the resolution makes no reference to a particular accounting method to be utilized by HSSW, Resolution 4-2012, does state that all new [sewer] connections will be subject to connection charges. Paragraph 14 states:
"All new connections to [HSSW] will be subject to connection charges based upon the [SCSD's] calculation of ECUs for each project or establishment in accordance with Sewer District Scale of Charges and Rules and Regulations The approved rate at the date of adoption of this Resolution is $2,000 per ECU."
As indicated above, an agreement between the parties is required by TCL §121, and the unequivocal mandate of the court ordered Stipulation. The Town's elimination of the connection [*13]fee without consent of the HSSW is in violation of the February 21, 2012 so-ordered Stipulation. The Court further finds that HSSW has had to relitigate the finding of Resolution 5-2011 and therefore been prejudiced by the Town's conduct, as it has effectively been denied the benefit of the agreement reached in the so-ordered Stipulation.
Therefore having considered NYSCEF document Nos. 1 through 39 and 52 through 113; and having heard oral argument on May 21, 2024 with Jesse P. Schwartz, Esq. appearing on behalf of Heritage Springs Sewer Works, Inc., and James P. Craig, Esq. appearing on behalf of the Town of Milton, Town Board of Milton, Scott Ostrander, in his Capacity as the Supervisor of the Town of Milton, John Frolish, in his capacity as a Councilman of the Town of Milton, and Frank Blaisdell, in his capacity as Councilman of the Town of Milton, it is hereby
ORDERED, that Resolution 57-2022 be annulled in its entirety and as such HSSW is entitled to collect $2,000/ECU in connection fees retroactive to the adoption of that resolution on July 27, 2022 (plus statutory interest thereon), and collect subsequent connection fees until such time as the parties agree to modification of same; and it is further
ORDERED, the matter is remitted to the Town Board for reconsideration; and it is further
ORDERED that, as and for a penalty for their civil contempt, the Town shall reimburse HSSW for those counsel fees incurred in connection with this action except for those fees associated with petitioner's Motion to Disqualify; and it is further
ORDERED, that counsel for HSSW shall submit an affidavit of services to the Court — on notice to respondents — within thirty (30) days of the date of this Decision and Order; and it is further
ORDERED any relief not specifically addressed herein has nonetheless been considered and is expressly denied.
The original of this Decision and Order has been e-filed by the Court. Counsel for HSSW is hereby directed to promptly obtain a copy of the e-filed Decision and Order for service with notice of entry upon all other parties in accordance with CPLR 5513.
Dated: June 12, 2024
Lake George, New York
ROBERT J. MULLER, J.S.C.

Footnotes

Footnote 1:ECUs have also been called equivalent domestic units (EDU) and equivalent residential units (ERU). All terms are identical and are based on the commonly accepted standard that a single-family home generates 200 gallons per day of sewage.

Footnote 2:In various submissions the $2,000/ERU connection fee is also referred to as a "Territory Expansion Fee". 

Footnote 3:Notably, this resolution acknowledged that HSSW had been providing the Town with yearly reports and states "[HSSW's] most recent report appears to show that it may have in fact recouped all of its' initial investment through hook-up fees collected over the past 30 years, along with a significant amount of return on that investment". (emphasis added) (Exhibit 14 of Petition)

Footnote 4:Despite the Board's recognition of the necessity of the Town Comptroller's involvement in the rate review a final report was never completed by the Comptroller.

Footnote 5:According to Resolution 57-2022, a hearing was "advertised and held on July 22, 2020 and continued September 1, 2021 with no appearance by HSSW". However, a review of the record indicates the public hearing was closed on July 22, 2020 at 9:10 pm. (NYSCEF No. 101 p. 40) Furthermore, the record is void of any minutes from a September 1, 2021 meeting. The minutes from September 8, 2021 Town Board meeting reference a cancelled rate review. (NYSCEF No. 103 p. 50) 

Footnote 6:The video recording of the July 22, 2020 Town Board meeting is available online at 
https://www.youtube.com/watch?v=JoQJCQ8P8Ks. These statements by Thomas Boghosian begin roughly 30 minutes and 35 seconds into the meeting.

Footnote 7:These statements by Bruce Boghosian begin roughly 52 minutes and 25 seconds into the meeting.

Footnote 8:It is undisputed that the revenue generated from the annual fees was insufficient to cover the cost of operating and maintaining the sewer system and therefore, connection fee revenue was used to bridge the gap.

Footnote 9:The 2010 Claflin Report included a table at page 9 which summarized the rate of return and unrecouped capital investment. That table reported $316,679 in unpaid interest (rate of return) due to HSSW, and $1,016,402 in unrecouped capital investment, for a total due of $1,333,081 as of December 31, 2009. (Exhibit 4 of Petition).

Footnote 10:This is in further conflict of Resolution 40-2019 which states, "[HSSW's] most recent report [2018 Annual Report] appears to show that it may have in fact recouped all of its' initial investment", suggesting prior to 2018, the initial capital had not yet been recovered.

Footnote 11:The Court finds respondents repeated suggestion that their allowance of HSSW to collect a reasonable rate of return on their investment was a "gift" is disingenuous as case law permits such a return. (Huff v C.K. Sanitary Sys., 260 AD2d 892, 897; Bennett Rd. Sewer Co. v Town Bd., 273 AD2d 902, 903 [4th Dept 2000]).