[990 NE2d 114, 967 NYS2d 876]

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, Appellant, v CANADIAN IMPERIAL BANK OF COMMERCE, Respondent, WILLIAM H. MILLARD, Defendant, THE MILLARD FOUNDATION, Intervenor.

Argued March 18, 2013; decided April 30, 2013

56

**POINTS OF COUNSEL**

*Kobre & Kim LLP*, New York City (*Michael S. Kim* and *Melanie L. Oxhorn* of counsel), for appellant. I. CPLR 5225 (b)'s postjudgment enforcement remedy may be applied under circumstances where assets are held by a garnishee's subsidiary but the garnishee is determined to have the actual, practical ability to direct or control their disposition. (*Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533; *Merkling v Ford Motor Co.*, 251 App Div 89; *United States v First Nat. City Bank*, 379 US 378; *Allied Mar., Inc. v Descatrade SA*, 620 F3d 70; *JW Oilfield Equip., LLC v Commerzbank, AG*, 764 F Supp 2d 587.) II. A court considering whether to issue a turnover order to a garnishee whose subsidiary has actual possession or custody of

assets should determine whether the garnishee has the actual, practical ability to control the subsidiary's disposition of them. (*Bellomo v Pennsylvania Life Co.*, 488 F Supp 744; *Frummer v Hilton Hotels Intl.*, 19 NY2d 533; *In re Citric Acid Litig.*, 191 F3d 1090; *First Natl. City Bank of N.Y. v Internal Revenue Serv. of U.S. Treasury Dept.*, 271 F2d 616; *Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533.)

*Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*Scott D. Musoff, Timothy G. Nelson* and *Gregory A. Litt* of counsel), for respondent. I. A bank that holds no property or accounts of the relevant debtor should not be compelled to turn over money or assets deposited at its foreign subsidiary banks. (*Sundail Constr. Co. v Liberty Bank*, 277 NY 137; *In re Delaney*, 256 NY 315; *Greenberg, Trager & Herbst, LLP v HSBC Bank USA*, 17 NY3d 565; *Brigham v McCabe*, 20 NY2d 525; *Solicitor for Affairs of His Majesty's Treasury v Bankers Trust Co.*, 304 NY 282; *Cruz v TD Bank, N.A.*, 855 F Supp 2d 157; *Grain Traders, Inc. v Citibank, N.A.*, 960 F Supp 784; *Bradford v Chase Natl. Bank of City of N.Y.*, 24 F Supp 28; *Middle E. Banking Co. v State St. Bank Intl.*, 821 F2d 897; *Geler v National Westminster Bank USA*, 770 F Supp 210.) II. The turnover statutes could validly be applied to corporate affiliates only if veil-piercing were established. (*Moreau v RPM, Inc.*, 20 AD3d 456; *Insurance Co. of N. Am. v EMCOR Group, Inc.*, 9 AD3d 319; *Frummer v Hilton Hotels Intl.*, 19 NY2d 533; *Bellomo v Pennsylvania Life Co.*, 488 F Supp 744; *Comprehensive Sports Planning v Pleasant Val. Country Club*, 73 Misc 2d 477; *IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A.*, 20 NY3d 310; *Tri City Roofers v Northeastern Indus. Park*, 61 NY2d 779; *Western Union Telegraph Co. v Pennsylvania*, 368 US 71; *JPMorgan Chase Bank, N.A. v Motorola, Inc.*, 47 AD3d 293; *Harris v Balk*, 198 US 215.)

### OPINION OF THE COURT

RIVERA, J.

Two questions certified to us by the United States Court of Appeals for the Second Circuit raise issues as to whether a judgment creditor can obtain a CPLR article 52 turnover order against a bank to garnish assets held by the bank's foreign subsidiary. We hold that for a court to issue a postjudgment turnover order pursuant to CPLR 5225 (b) against a banking entity, that entity itself must have actual, not merely constructive, possession or custody of the assets sought. That is, it is not enough

that the banking entity's subsidiary might have possession or custody of a judgment debtor's assets.

In 1994, plaintiff, the Commonwealth of the Northern Mariana Islands (the Commonwealth), obtained two separate tax judgments in the United States District Court for the Northern Mariana Islands against William and Patricia Millard (the Millards) for unpaid taxes in the respective amounts of $18,317,980.80 and $18,318,113.41. The Millards, who had previously resided in the Commonwealth since 1987, relocated before the Commonwealth was able to obtain the judgments.[1]

In March and April 2011, the Commonwealth registered the tax judgments in the United States District Court for the Southern District of New York[2] and commenced proceedings as a judgment creditor, pursuant to Federal Rules of Civil Procedure rule 69 (a) (1) and CPLR 5225 (b), seeking a turnover order against garnishees holding assets of the Millards. As relevant here, the Commonwealth named Canadian Imperial Bank of Commerce (CIBC), a Canadian bank headquartered in Toronto, with a branch in New York, as a garnishee under the theory that the Millards maintained accounts in subsidiaries of CIBC, namely, CIBC FirstCaribbean International Bank Limited (CFIB) or CFIB's affiliates in the Cayman Islands. According to the Commonwealth, CFIB is a 92% owned-and-controlled direct subsidiary of CIBC.

The Commonwealth moved, by order to show cause, for a turnover order against CIBC and a preliminary injunction, on the ground that "CIBC has the control, power, authority and practical ability to order [CFIB] to turn over funds on deposit in the name of the Millards." In support, the Commonwealth referred to the 92% ownership of CFIB, and other indicia of control, asserting that CIBC imposed a governance structure upon CFIB that "affords the parent company full oversight of the risk and control framework of all [of CFIB's] operations." The Commonwealth further argued that the overlap in significant personnel, and CIBC's oversight of CFIB's compliance with various legal requirements, such as the Sarbanes-Oxley Act, demonstrated CIBC's ability to exert actual, practical control over CFIB's operations. In opposition, CIBC contended that CFIB is a "legally separate and independent entit[y]" and that,

---

**1.** In 2010, the Commonwealth learned that the Millards had renounced their United States citizenship and resided in the Cayman Islands.

**2.** The Commonwealth also registered the judgments in the United States District Court for the Southern District of Florida.

absent an information sharing agreement, "CIBC is unable to access accounts or account information held by [CFIB] or its subsidiaries."

The District Court denied the motion and maintained a previously issued restraining order that precluded CIBC from engaging in certain activity related to the Millards' accounts. While the District Court found the Commonwealth's "practical ability to control" argument colorable, it observed that the scope of the phrase "possession or custody," contained in CPLR 5225 (b), was an issue suited for this Court's consideration.

Upon appeal, the Second Circuit determined that for the reasons set forth in the District Court's opinion, the resolution of the case turned on unresolved issues of New York law, and certified the following questions to this Court:

> "1. May a court issue a turnover order pursuant to N.Y. C.P.L.R. § 5225(b) to an entity that does not have actual possession or custody of a debtor's assets, but whose subsidiary might have possession or custody of such assets?

> "2. If the answer to the above question is in the affirmative, what factual considerations should a court take into account in determining whether the issuance of such an order is permissible?" (693 F3d 274, 275 [2d Cir 2012]).

We accepted the certified questions and now answer the first in the negative, and as a consequence refrain from answering the second as academic.[3]

Under CPLR article 52, a special proceeding for a turnover order is the procedural mechanism devised by the legislature to enforce a judgment against an asset of a judgment debtor, held in the "possession or custody" of a third party. Section 5225 (b) provides, in pertinent part:

> "Upon a special proceeding commenced by the judgment creditor, *against a person in possession or custody of money or other personal property in which the judgment debtor has an interest*, or against a

---

**3.** On appeal CIBC contends that the Commonwealth incorrectly moved pursuant to CPLR 5225 (b) rather than CPLR 5227, arguing that the latter is the applicable section to turnover orders involving bank deposits as the "debt" owed by the bank to the customer. We have no cause to address the applicability of section 5227, and limit our analysis to the issues concerning CPLR 5225 (b) presented by the Second Circuit's certification to this Court.

person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

The Commonwealth contends that the phrase "possession or custody" inherently encompasses the concept of control, and, therefore, section 5225 (b) is applicable to garnishees with constructive possession of a judgment debtor's assets. As such, the Commonwealth proposes that an actual, practical control test—i.e., whether the bank could practically order its subsidiary to turn over the assets of the judgment debtor—should be adopted by this Court as the appropriate standard. We find the Commonwealth's interpretation of section 5225 (b) unpersuasive for the reasons that follow.

In determining the expanse of section 5225 (b) our "starting point" is "the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). "[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976], citing *Bender v Jamaica Hosp.*, 40 NY2d 560 [1976]). Moreover, "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Majewski*, 91 NY2d at 583, citing *Patrolmen's Benevolent Assn.*, 41 NY2d at 208).

The plain language of section 5225 (b) refers only to "possession or custody," excluding any reference to "control." The absence of this word is meaningful and intentional as we have previously observed that the failure of the legislature to include a term in a statute is a significant indication that its exclusion was intended (*see People v Finnegan*, 85 NY2d 53, 58 [1995] ["We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a

strong indication that its exclusion was intended"]; *Pajak v Pajak*, 56 NY2d 394, 397 [1982] ["The failure of the Legislature to provide that mental illness is a valid defense in an action for divorce based upon the ground of cruel and inhuman treatment must be viewed as a matter of legislative design. Any other construction of the statute would amount to judicial legislation"]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 74). Accordingly, we interpret the omission of "control" from section 5225 (b) as an indication that "possession or custody" requires actual possession.

The language of the predecessor statute to section 5225 (b) and the legislation enacting the CPLR lend additional support to the view that "possession or custody" does not include constructive possession. Prior to the 1962 legislation enacting the CPLR, the relevant turnover statutes referred to "possession" and "control" and made no mention of custody (*see* Civil Practice Act §§ 793, 796). Civil Practice Act § 796, the predecessor statute to section 5225 (b), provided in relevant part that

> "[w]here it appears from the examination or testimony taken in a special proceeding authorized by this article that the judgment debtor has in his possession or under his control money or other personal property belonging to him, or that money or one or more articles of personal property capable of delivery, his right to the possession whereof is not substantially disputed, are in the possession or under the control of another person, the court in its discretion and upon such a notice given to such persons as it deems just, or without notice, may make an order directing the judgment debtor or other person immediately to pay the money or deliver the articles of personal property to a sheriff designated in the order."

Section 5225 (b) and other related provisions were enacted to include the "possession or custody" language, thus making a clear distinction between the prior references to "possession" and "control." It is a well settled tenet of statutory construction that "[t]he Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law" (McKinney's Cons Laws of NY, Book 1, Statutes § 193). The exclusion of the word "control" signaled a purposeful legislative modification of the

applicable scope of turnover statutes. The Commonwealth would have us construe section 5225 (b) to include that term, but "[a] court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit" because "the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (McKinney's Cons Laws of NY, Book 1, Statutes § 74). In other words, we cannot read into the statute that which was specifically omitted by the legislature.

The Commonwealth argues that the legislature simply substituted "custody" as the functional equivalent of "control." However, we read the statute both based on its plain meaning and in context, and it is clear that the legislature did not pen one word anticipating that another would be "read into" the CPLR. When the legislature has sought to encompass the concept of "control" it has done so explicitly, evincing a legislative intent to exclude consideration of "control" from those sections from which it is omitted. For example, CPLR 3111, which concerns the production of discovery materials, provides that "books, papers and other things in the possession, custody or control of the person to be examined" should be produced. CPLR 3119 (a) (4) (ii) similarly provides that a subpoena may be used to order a person to produce discovery "in the possession, custody or control of the person" (*see also* CPLR 2701, 3120, 3122-a, 5224). We are led to the conclusion that the legislature considered "control" and "custody" to refer to distinct concepts (*see People v Elmer*, 19 NY3d 501, 507 [2012] [observing that the legislature is presumed to know the distinction between terms used in legislation]; *Easley v New York State Thruway Auth.*, 1 NY2d 374, 379 [1956] ["Legislatures are presumed to know what statutes are on the books and what is intended by constitutional amendments approved by the Legislature itself"]; McKinney's Cons Laws of NY, Book 1, Statutes § 222).

As these sections of the CPLR indicate, in a documentary discovery context, with expansive rules of disclosure, it is reasonable to conclude that the legislature would employ a broader "possession, custody or control" standard. Indeed, various courts have interpreted "possession, custody or control" to allow for discovery from parties that had practical ability to request from, or influence, another party with the desired discovery documents. As such, courts have interpreted "possession, custody or control" to mean constructive possession (*see*

*Bank of New York v Meridien BIAO Bank Tanzania Ltd.*, 171 FRD 135, 146 [SD NY 1997] [" '(C)ontrol' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action"]; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 FRD 493, 530 [SD NY 1996]).

Consequently, because "possession, custody or control" has been construed to encompass constructive possession, then, by contrast, legislative use of the phrase "possession or custody" contemplates actual possession. Notably, sections of the CPLR pertaining to the disposition of property utilize the narrower "possession or custody" standard. For example, CPLR 1320, which concerns the attachment or levy of personal property, is limited to property "in the defendant's possession or custody." CPLR 6214 and 6215 similarly limit the levy of personal property to items within the "possession or custody" of the defendant (*see also* CPLR 1321, 1325, 2701, 5222, 5225, 5232, 5250, 6219). This distinction supports the view that the legislature has applied a higher standard to insure the proper disposition of property (*see* CPLR 5209; *JPMorgan Chase Bank, N.A. v Motorola, Inc.*, 47 AD3d 293 [1st Dept 2007]).

The Commonwealth argues that this distinction is of no moment, speculating that the legislature blindly duplicated the standards of the Federal Rules of Evidence when enacting the CPLR. However, "[w]hen different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended" (*Matter of Albano v Kirby*, 36 NY2d 526, 530 [1975]). Consequently, the distinction cannot be simply disregarded, and this Court is required to construe the entire CPLR in a manner that harmonizes these variations (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98). In light of these differences, the most reasonable way to interpret these provisions is to conclude that "possession, custody or control" contemplates constructive possession, whereas "possession or custody," by its omission of the term "control," refers to actual possession. Accordingly, a section 5225 (b) turnover order cannot be issued against a garnishee lacking actual possession or custody of a judgment debtor's assets or property.

Finally, our decision in *Koehler v Bank of Bermuda Ltd.* (12 NY3d 533 [2009]) does not require a different reading of

section 5225 (b). In that case, we addressed whether, under CPLR article 52, a New York court could order a bank over which it had personal jurisdiction to deliver out-of-state stock certificates to a judgment creditor. The Court noted that unlike prejudgment attachment, which requires jurisdiction over property, "postjudgment enforcement requires only jurisdiction over persons" (12 NY3d at 537). As such, "CPLR 5225 (b) applies when the property is not in the judgment debtor's possession" and "contemplate[s] an order, directed at a defendant who is amenable to the personal jurisdiction of the court, requiring him to pay money or deliver property" (*id.* at 541). Accordingly, "a New York court with personal jurisdiction over a defendant may order him [or her] to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee" (*id.*).

Notably, *Koehler* does not interpret the meaning of the phrase "possession or custody," and is only significant in holding that personal jurisdiction is the linchpin of authority under section 5225 (b) (*see also Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d 303, 312 [2010]). Indeed, many cases have held that a turnover order is given effect through a court's exercise of personal jurisdiction over a party. Thus, in *Starbare II Partners v Sloan* (216 AD2d 238 [1st Dept 1995]), albeit a section 5225 (a) case, the New York court had the authority to order a judgment debtor to turn over paintings he owned, but stored in New Jersey. In *Miller v Doniger* (28 AD3d 405 [1st Dept 2006]), the judgment debtor, who was in New York, was directed to turn over his out-of-state Wachovia bank accounts to the judgment creditor. Similarly, in *Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.* (41 AD3d 25 [1st Dept 2007]), the Appellate Division observed that "a turnover order merely directs a defendant, over whom the New York court has jurisdiction, to bring its own property into New York" (41 AD3d at 31). Thus, "[h]aving acquired jurisdiction of the person, the court [ ] can compel observance of its decrees by proceedings *in personam* against the owner within the jurisdiction" (*Koehler*, 12 NY3d at 539). However, in these cases, the garnishee was directed to deliver assets already within its possession. No case supports the Commonwealth's attempt to broadly construe *Koehler* and require that a garnishee be compelled to direct another entity, which is not subject to this state's personal jurisdiction, to deliver assets held in a foreign jurisdiction. Such an expansion is inconsistent with the plain language and scope of section 5225 (b).

Accordingly, certified question No. 1 should be answered in the negative and certified question No. 2 not answered as academic.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and PIGOTT concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the negative and certified question No. 2 not answered as academic.