Dragons 516 Ltd. v SMI USA Group LLC (2024 NY Slip Op 50977(U))

[*1]

Dragons 516 Ltd. v SMI USA Group LLC

2024 NY Slip Op 50977(U)

Decided on July 30, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 30, 2024
Supreme Court, New York County

Dragons 516 Limited, Petitioner,

against
SMI USA Group LLC, SMI 138 E 50 ST LLC,50 LEX DEVELOPMENT LLC, and GDC 138 E 50 LLC, Respondents.

Index No. 158184/2022

Attorneys for Petitioner:
William H. Taft V of DEBEVOISE & PLIMPTON LLP
Kristin D. Kiehn of DEBEVOISE & PLIMPTON LLP
Aasiya F. Mirza Glover of DEBEVOISE & PLIMPTON LLP
Timothy Cuffman of DEBEVOISE & PLIMPTON LLP
Attorneys for the Movants:
John Lonuzzi of LONUZZI & WOODLAND, LLP
Rebecca Woodland of LONUZZI & WOODLAND, LLP
Neil Lieberman of HOLWELL SHUSTER & GOLDBERG LLP
Karen Sebaski of HOLWELL SHUSTER & GOLDBERG LLP
Prishika Raj of HOLWELL SHUSTER & GOLDBERG LLP

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 101, 104, 106, 107, 109 were read on this motion to DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 100, 102, 105 were read on this motion to DISMISS.
Motion sequence numbers 002 and 003 are consolidated for disposition herein.
This CPLR 5225 (b) turnover proceeding is based on the court's $41,138,614.84 judgment in favor of petitioner Dragons 516 Limited against respondent GDC 138 E 50 LLC (GDC) in an underlying breach of contract action, Dragons 516 Limited v GDC 138 E 50 LLC (Sup Ct, NY County, index No. 651690/2019) (the underlying action). Petitioner commenced this special proceeding by verified petition filed pursuant to CPLR 5225 (b) to compel the [*2]turnover of funds transferred by judgment debtor GDC to respondents 50 Lex Development LLC (50 Lex), SMI USA Group LLC (SMI-USA), and SMI 138 E 50 St LLC (SMI-138). In motion sequence number 002, respondents SMI-USA and SMI-138 move, pre-answer, pursuant to CPLR 404 (a) and CPLR 3211 (a) (3), (a) (4), and (a) (5), to dismiss the petition. In motion sequence number 003, respondent 50 Lex moves, pre-answer, generally for the same relief. For the following reasons, both motions are denied.
CPLR 5225 (b) provides an expedited special proceeding against "a person who is a transferee of money or other personal property from the judgment debtor, where it is shown . . . that the judgment creditor's rights to the property are superior to those of the transferee," whereupon "the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff" (see Matter of Lepatner Project Solutions LLC v 320 W. 115 St., LLC, 221 AD3d 506, 507 [1st Dept 2023]).
In such a special proceeding, pursuant to CPLR 404 [a], "a respondent may raise an objection in point of law by setting it forth in his or her answer or by a motion to dismiss the petition" (Matter of Natl. Union Fire Ins. Co. of Pittsburgh, PA v Reichman, 221 AD3d 69, 88 [2d Dept 2023] [alterations omitted]). The First Department has observed that CPLR 404's "evident purpose is to permit a motion to be made on all grounds available in an action under CPLR 3211" (Matter of Bernstein Family LP v Sovereign Partners, LP, 66 AD3d 1, 5 [1st Dept 2009], citing Joseph M. McLaughlin, Prac Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C404:1 at 644 [1990 ed]).
1. Motion sequence number 002
First, respondents SMI-USA and SMI-138 move to dismiss the petition pursuant to CPLR 3211 (a) (5) based on the principles of collateral estoppel and res judicata, arguing that the issues raised herein have been litigated and decided by this court and the Appellate Division in the underlying action. SMI-USA and SMI-138 point out that this court previously denied petitioner's request to amend its complaint in the underlying action to include claims based in fraud, and that the Appellate Division affirmed that order. They argue that, therefore, petitioner is estopped from raising any arguments regarding fraud in this proceeding.
"Collateral estoppel . . . is . . . a component of the broader doctrine of res judicata which holds that . . . a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979]). Thus, "the party seeking to invoke the benefits of the principle must still prove two necessary elements. First, it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy. Additionally, there must be proof that the issue in the prior action is identical, and thus decisive, of that in issue in the current action" (id.).
Here, at no point in the court's decision on the motion to amend did it evaluate the merits of a fraud claim against any of the defendants. Rather, the court merely observed that the proposed additional causes of action for "aiding and abetting fraud" and "conspiracy to commit fraud" were not viable without an underlying fraud claim (see Dragons 516 Limited v GDC 138 E 50 LLC, 2020 NY Slip Op 33403[U], *5-6 [Sup Ct, NY County 2020], affd 201 AD3d 463 [1st Dept 2022]). The court further observed that, even if a fraud claim had been pleaded, if it were [*3]based in GDC's fraudulent inducement of plaintiff to enter into the Facility Agreement, it "would fail as duplicative of the breach of contract claim, since the damage from both claims are the same, the loss of the $30 million loaned" (id. at 3).
Likewise, when the Appellate Division later affirmed the court's decision (Dragons 516 Ltd. v GDC 138 E 50 LLC, 201 AD3d 463 [1st Dept 2022]), it never held that a fraud claim would not be viable against GDC—it merely observed, affirming this court's reasoning, that "plaintiff already obtained judgment against GDC for a breach of contract and duplicative damages for fraudulent inducement are not recoverable" (id. at 463). In other words, neither of the courts proceeded to evaluate whether there had been fraud or fraudulent inducement.
Therefore, there can be no res judicata or collateral estoppel effect to bar petitioner from subjecting respondents to these turnover proceedings.
Second, SMI-USA and SMI-138 seek to dismiss the petition pursuant to CPLR 3211 (a) (4) on the grounds that another action is currently pending before the court, specifically Dragons 516 Limited v Knights Genesis Investment Limited (Sup Ct, NY County, index No. 653187/2021) (the 2021 action), which was commenced on May 14, 2021. The instant proceeding was commenced on September 23, 2022.
CPLR 3211 (a) (4) permits the court to dismiss a claim on the basis that "there is another action pending between the same parties for the same cause of action in a court of any state or the United States." "To warrant dismissal on that basis a comparison must first be made of the allegations of the two complaints to determine whether the suits are indeed for the same cause of action" (Sec. Tit. & Guar. Co. v Wolfe, 56 AD2d 745, 745 [1st Dept 1977]).
The proceeding commenced here is different in nature from the claims in the 2021 action for fraud, fraud and conspiracy to defraud, conversion, and aiding and abetting conversion. Here, petitioner seeks turnover from respondents on the basis that these entities were the recipients of allegedly fraudulent transfers (petition ¶ 9). On the other hand, the 2021 action hinges on the allegation that these entities fraudulently conspired with GDC to induce petitioner to provide a loan to GDC. While the two proceedings arise from the largely the same circumstances, they are not the "same cause of action" (CPLR 3211 [a] [4]). By way of illustration, even if the court finds in that action that SMI-USA and SMI-138 did not fraudulently induce plaintiff to provide the loan, the court could still find that they were the recipients of GDC's fraudulent transfers into or out of the 50 Lex's TD Bank account. Therefore, CPLR 3211 (a) (4) does not apply.
Third, SMI-USA and SMI-138 seek to dismiss the petition pursuant to CPLR 3211 (a) (3), arguing that, as a foreign corporation doing business in New York, petitioner lacks standing or capacity to commence and prosecute this proceeding.
Business Corporations Law § 1312 prohibits a "foreign corporation doing business in this state without authority" from maintaining "any action or special proceeding in this state unless and until such corporation has been authorized to do business . . . and it has paid to the state all fees and taxes imposed under the tax law or any related statute" (see also Highfill, Inc. v Bruce & Iris, Inc., 50 AD3d 742 [2d Dept 2008]).
In support, SMI-USA and SMI-138 point to the $30 million loan at the heart of this dispute as evidence of petitioner's "doing business" in New York. However, as petitioner points out, the standard for invoking the statute is that the "corporation's business activities in New York were not just casual or occasional, but so systematic and regular as to manifest continuity of activity in the jurisdiction" (JPMorgan Chase Bank, N.A. v Didato, 185 AD3d 801, 802-03 [2d Dept 2020] [emphasis added]). The party invoking the statute has the burden of proof (see [*4]id.). SMI-USA and SMI-138 describe no other instance in which petitioner engaged in business in New York and thus fail to carry their burden (see id.).
For the above reasons, the motion of SMI-USA and SMI-138 to dismiss the petition is denied in its entirety, including the application for sanctions on petitioner pursuant to 22 NYCRR 130-1.1.
2. Motion sequence number 003
In motion sequence number 003, 50 Lex first argues that the petition should be dismissed as duplicative of the 2021 action, running afoul of CPLR 3211 (a) (4). For the reasons already set forth above with respect to motion sequence number 002, this argument is unavailing.
Second, 50 Lex seeks dismissal of the petition on the grounds that petitioner has failed to establish its entitlement to turnover of 50 Lex's funds. 50 Lex does not refer specifically to any subsection of CPLR 3211.
A petitioner is entitled to turnover of funds from "a transferee of money or other personal property from the judgment debtor, where it is shown . . . that the judgment creditor's rights to the property are superior to those of the transferee" (Matter of Lepatner Project Solutions LLC).
Former Debtor and Creditor Law (DCL) § 276 (repealed by L 2019, ch 580, § 2) provides that transfers made or obligations incurred by debtors are voidable as to creditors if the transfer was made or obligation incurred "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."[FN1]
Intent to defraud can be inferred from the attributes and actions of the debtor and its co-conspirators, such as the inadequacy or absence of consideration; the debtor's knowledge of its debt and inability to pay it; the existence of a pattern or series of transactions or course of conduct after the debtors incurred their obligation to the plaintiff; or the close relationship among the parties to the transaction (see Cadle Co. v. Organes Enterprises, Inc., 29 AD3d 927, 928 [2d Dept 2006]).
Under former DCL § 273, "a conveyance that renders the conveyor insolvent is fraudulent as to creditors without regard to actual intent, if the conveyance was made without fair consideration" (see Stout St. Fund I, L.P. v Halifax Grp., LLC, 148 AD3d 744, 747 [2d Dept 2017]). While, in general, the party challenging the conveyance has the burden of proving insolvency, "when a transfer is made without fair consideration, a presumption of insolvency and fraudulent transfer arises" (Battlefield Freedom Wash, LLC v Song Yan Zhuo, 148 AD3d 969, 971 [2d Dept 2017]; see Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein, 166 AD3d 496, 497 [1st Dept 2018]).
Here, petitioner alleges sufficient facts to establish, prima facie, that GDC caused petitioner to transfer the loan proceeds to 50 Lex's account "with actual intent . . . to hinder, delay, or defraud" its future creditor, petitioner Dragons (DCL former § 273). As alleged, GDC and SMI-USA induced petitioner to transfer the loan proceeds to 50 Lex's account at TD Bank, even though the Facility Agreement originally set out that the loan would be distributed in installments (see petition, exhibit G), using documents containing false statements indicating that GDC and SMI-USA owned, respectively, 10% and 45.3% interest in 50 Lex, including a February 28, 2017 LLC Agreement (see petition, exhibit D), an Officer's Certificate of 50 Lex [*5]dated June 13, 2017 (see petition, exhibit X), and an Officer's Certificate of SMI-USA dated June 13, 2017 (see petition, exhibit Y). Following the transfer, GDC provided petitioner with a copy of a June 16, 2017 LLC Agreement Amendment (see petition, exhibit M) falsely stating that GDC "has used the loan proceeds . . . to make a capital contribution to [50 Lex] in the amount of US $30,000,000" and that GDC owned 10 percent preferred interests in 50 Lex (see petition at ¶ 83; Ying aff ¶ 33). GDC and SMI-USA later acknowledged in an Agreement and Acknowledgement dated February 19, 2020, however, that the June 16, 2017 LLC Agreement Amendment "is not and has never been valid or of any force or effect whatsoever" and that GDC never had "any . . . right . . . or interest in [50 Lex]" (Ying aff ¶¶ 41, 46; see petition exhibit S). Furthermore, a large portion of the funds were transferred to SMI-USA on the same day as petitioner's transfer to the 50 Lex account, and the remainder to Knights Genesis Investment Ltd. soon thereafter (Knights Genesis). The 50 Lex account at TD Bank was opened by Kevin Gao, Chief Investment Officer of SMI-USA, using fraudulent documents and was used solely for the purpose of receiving the loan proceeds in question, and was closed within a month after the loan proceeds were transferred out. As a result, GDC had insufficient funds to repay its debt to Dragons.
These facts demonstrate an "absence of consideration," "a pattern or series of transactions or course of conduct after the debtors incurred their obligation to the plaintiff" that indicate fraud; "the debtor's knowledge of its debt and inability to pay it"; and a "close relationship among the parties to the transaction" such that intent to defraud may properly be inferred (Cadle Co. v. Organes Enterprises, Inc.).
Contrary to 50 Lex's argument, the conveyance does not require the involvement of 50 Lex in order to be determined to be fraudulent. As pointed out by petitioner, the relevant intent under DCL former 276 is that of the transferor, not the transferee.
The transfer is also voidable on the separate, independent ground that GDC did not receive any consideration for the transfer to 50 Lex and is therefore fraudulent (see DCL former § 273). In this proceeding, petitioner has alleged that, contrary to GDC's representation to petitioner, GDC never acquired an interest in 50 Lex in exchange for its $30 million transfer to the 50 Lex account; and therefore received no consideration at all for the transfer. At the motion to dismiss stage, the court may also presume that GDC became insolvent and that the transfer was fraudulent (see Battlefield Freedom Wash, LLC v Song Yan Zhuo; see Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein).
In support of dismissal, 50 Lex argues that, by petitioner's own allegations, 50 Lex never had actual possession or custody of the funds, citing Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce (21 NY3d 55, 63 [1st Dept 2013]) for the proposition that "[a] section 5225(b) turnover order cannot be issued against a garnishee lacking actual possession or custody of a judgment debtor's assets or property." The fact that 50 Lex subsequently spent the funds it acquired by transferring them to SMI-USA and Knights Genesis, however, is immaterial to a finding of actual possession, where 50 Lex allegedly received the funds at some point in time. Indeed, "[a] personal judgment against the transferee of a fraudulent conveyance may be obtained where the transferee has made it impossible to return the property to the creditor by, for example, disposing of wrongfully conveyed property or depreciating it" (Fed. Deposit Ins. Corp. v Heilbrun, 167 AD2d 294, 294 [1st Dept 1990]; see also Matter of Rockefeller v Statement Servs., Corp., 204 AD3d 922, 925 [2d Dept 2022] ["CPLR 5225(b) furnishes a mechanism for obtaining a money judgment against the recipient of a fraudulent [*6]conveyance who has, in the interim, spent or dissipated the property conveyed."]). Moreover, petitioner's entitlement to the loan proceeds is not to the specific body of funds that were originally transferred to 50 Lex's account. Because petitioner alleges that 50 Lex received the funds into its TD Bank account, actual possession is established for purposes of surviving a motion to dismiss.
To the extent that 50 Lex attempts to rebut petitioner's pleadings with proof, the court assumes that 50 Lex is arguing under CPLR 3211 (a) (1) by appealing to documentary evidence. To merit dismissal, such evidence must "conclusively establish[] a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d 83, 88 [1994]).
50 Lex argues that it had no part at all in the underlying fraud or the fraudulent transfer in question and cannot be subject to this turnover proceeding. It claims it was not involved in the agreement to deposit the funds into the TD Bank account in its name, never opened, owned, or controlled the bank account, and was not involved in the transfer of the funds from its bank account to an account elsewhere (50 Lex's mem in support of mot at 2-3). In support, it submits the affidavit of Arthur W. Hooper, President of 50 Lex, who avers, among other things, that 50 Lex was not aware of its own TD Bank account until years after the funds were transferred out (see Hooper aff ¶¶ 13, 18, 19). 50 Lex also points out that the address listed for that account is that of SMI-USA, arguing that this indicates that the bank account, though in 50 Lex's name, was opened fraudulently by SMI-USA without its involvement. If true, this would undermine whether 50 Lex had actual possession of the funds. However, Hooper's affidavit falls short of the kind of "conclusive[]" evidence contemplated by CPLR 3211 (a) (1) (Leon v Martinez). To overcome the general rule that the court accepts the pleadings as true (Edwards v Nicolai, 153 AD3d 440, 441 [1st Dept 2017]), the proof must be "essentially undeniable" (Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc., 120 AD3d 431, 433 [1st Dept 2014]). The issue is to be determined based on proof before the court at the resolution of this petition, following respondents' answers, not at the time of this motion to dismiss.
Accordingly, it is hereby
ORDERED that the motion of respondents SMI-USA and SMI-138 to dismiss the petition (seq No. 002) is denied in its entirety; and it is further
ORDERED that respondent 50 Lex's motion to dismiss the petition (seq No. 003) is also denied; and it is further
ORDERED that respondents shall serve and file any answers to the petition within five days after service of this order with notice of entry; and it is further
ORDERED that petitioner, after service of this order with notice of entry, may re-notice the matter for hearing upon two days' notice, and that respondents may re-notice the matter for hearing upon service of the answer upon seven days' notice.
DATE July 30, 2024
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:Article 10, sections 270-281 of the DCL apply to the transfer at issue here because the transfer took place in June 2017, before the date Article 10 was repealed on April 4, 2020.