Matter of Johnson v McManus

2026 NY Slip Op 02187

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Michael L. Johnson, as Chief Enforcement Counsel of the Division of Election Law Enforcement of the New York State Board of Elections, Respondent,

v

Devin McManus, as Treasurer of DSA For the Many, et al., Appellants.

Decided and Entered:April 9, 2026

CV-25-0738

Calendar Date: February 17, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mackey, JJ.

Movement Building Law Project PC, Hastings on Hudson (Alexander Rabb of counsel) and Appellate Litigation Clinic, Columbia Law School, Morningside Heights Legal Services, Inc., New York City (Dennis Fan of counsel), for appellants.

State Board of Elections, Albany (James Barron of counsel), for respondent.

[*1]

Mackey, J.

Appeal from a judgment of the Supreme Court (Roger McDonough, J.), entered January 21, 2025 in Albany County, which granted petitioner's application, in a proceeding pursuant to Election Law § 3-104 (5) (a) and article 16, to confirm a determination of the New York State Board of Elections finding that respondents violated Election Law § 14-126 (2) and to impose a civil penalty in accordance with that determination.

In October 2022, the New York State Board of Elections (hereinafter the BOE) Division of Election Law Enforcement, of which petitioner is chief enforcement counsel, commenced an investigation into respondent DSA For the Many (hereinafter DSA), a registered multi-candidate committee organized to support candidates endorsed by the Democratic Socialists of America seeking office in the New York City area. Respondent Devin McManus is DSA's treasurer. The BOE's investigation sought to determine whether DSA was authorized to act on behalf of the 13 candidates it purported to represent in the 2022 election cycle and whether it made contributions to those candidates in excess of the contribution limits set forth in the Election Law. At the investigation's conclusion, petitioner determined that there was substantial reason to believe that respondents had violated the Election Law and an administrative enforcement proceeding was commenced.

Respondents waived their right to an evidentiary hearing and, based upon the parties' respective submissions, a BOE Hearing Officer determined that respondents had failed to obtain authorization to represent 12 of the candidates at issue during at least part of the 2022 election cycle and that they had violated Election Law § 14-126 (2) by making contributions to the subject candidates in excess of applicable contribution limits under Election Law § 14-114. Accordingly, the Hearing Officer recommended the imposition of a civil penalty and fines totaling $312,068.95. Petitioner thereafter commenced this proceeding pursuant to Election Law § 3-104 (5) (a) and Election Law article 16 to confirm the BOE's determination and impose civil penalties upon respondents. Respondents answered and opposed the petition. Supreme Court ultimately granted the petition, but reduced the total penalty imposed to $212,068.95. Respondents appeal.

This Election Law matter rests upon a question of "pure statutory construction dependent only on accurate apprehension of legislative intent" (Matter of City of Long Beach v New York State Pub. Empl. Relations Bd., 39 NY3d 17, 22 [2022] [internal quotation marks and citations omitted]; see Matter of Fleetwood Drywall Inc. [Commissioner of Labor], 201 AD3d 1059, 1062 [3d Dept 2022]; Matter of Brennan Ctr. for Justice at NYU Sch. of Law v New York State Bd. of Elections, 159 AD3d 1301, 1307 n [3d Dept 2018] [Egan Jr., J., concurring], lv denied 32 NY3d 912 [2019]). The best evidence of legislative intent is the plain language of the statute itself (see Rodriguez v City of New York, 31 NY3d [*2]312, 317 [2018]; see also Matter of Marzullo v DelConte, 165 AD3d 1466, 1468 [3d Dept 2018]), and "[w]hen a statute is part of a broader legislative scheme, its language must be construed in context and in a manner that harmonizes the related provisions and renders them compatible" (Matter of Kosmider v Whitney, 34 NY3d 48, 55 [2019] [internal quotation marks and citations omitted]). We are further guided by the Court of Appeals' repeated observations that, in view of the detailed procedural framework set forth in the Election Law, "there is no invitation for the courts to exercise flexibility in [the] statutory interpretation" thereof (Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 258 [2004]; see Matter of Seawright v Board of Elections in the City of N.Y., 35 NY3d 227, 233 [2020]).

Political committees are permitted under the Election Law to "aid or take part in the election or defeat of a candidate for public office" (Election Law § 14-100 [1]) and "to support more than one candidate" for this purpose (Election Law § 14-114 [4]). In doing so, the treasurer of each such committee is required to make a sworn report to the BOE reporting "any money or other valuable thing or . . . any liability to pay money or its equivalent" received or spent in connection with an election (Election Law § 14-102 [1]), and each individual candidate is required to make a similar sworn report of contributions made to "aid his or her own nomination or election" (Election Law § 14-104 [1]). In lieu of filing his or her own financial disclosure statement, however, a candidate may execute a sworn statement in accordance with Election Law § 14-104, indicating that "such candidate has made no such expenditures and does not intend to make any such expenditures, except through a political committee authorized by such candidate" (Election Law § 14-104 [1]). In turn, "[a]ny political committee aiding or taking part in the election or nomination of any candidate" must file with the BOE a sworn statement "that the candidate has authorized the political committee to aid or take part in his [or her] election" (Election Law § 14-112). A committee so authorized may then "fulfill all of the filing requirements of [the Election Law] on behalf of such candidate" (Election Law § 14-104 [1]).

In facilitating campaign contributions, which are subject to prescribed statutory limits, the Election Law provides that contributions made to "a political committee authorized to support more than one candidate" are "deemed contributed to every candidate supported by such committee," with each candidate's portion thereof allocated pursuant to "any formula based upon reasonable standards established by the committee" (Election Law § 14-114 [4]). Accordingly, the relevant committee is required to report "the total amount received by the committee from each contributor on behalf of all such candidates and the amount of each such contribution allocated to each candidate by dollar amount [*3]and percentage" (Election Law § 14-114 [4]). Pertinent here, Election Law § 14-126 (2), upon which the penalties here were imposed, provides that "[a]ny person who, acting as or on behalf of a candidate or political committee, under circumstances evincing an intent to violate such law, unlawfully accepts a contribution in excess of a contribution limitation established in [Election Law article 14], shall be required to refund such excess amount and shall be subject to a civil penalty equal to the excess amount plus a fine of up to [$10,000]," recoverable in a special proceeding or action by the BOE (Election Law § 14-126 [2]).

In finding respondents in violation of the Election Law, petitioner maintained that the BOE had "no record of any candidate authorizing" DSA to act on their behalf and that, although McManus had filed CF-03 committee authorization forms purporting to list these candidates as having so authorized DSA, Election Law § 14-104 (1) further required each candidate to expressly authorize DSA by submission of a CF-16 candidate authorization form. Absent proper authorization, petitioner argued that DSA constituted an individual contributor pursuant to Election Law § 14-114 (1) and, by exceeding the applicable contributor limits under Election Law § 14-114 (1) (former [b]), penalties under Election Law § 14-126 (2) were warranted. Alternatively, even had DSA been properly authorized, petitioner asserted that DSA's expenditures on behalf of the subject candidates were in excess of the allocations reported to the BOE under Election Law § 14-114 (4) and, thus, likewise warranted penalties pursuant to Election Law § 14-126 (2).

We agree with respondents, however, that Election Law § 14-126 (2) is inapplicable to the circumstances presented here, as the conduct alleged by petitioner amounted only to the making, and not the acceptance, of contributions in support of the subject candidates. In fact, petitioner's arguments on appeal emphasize DSA's actions in "ma[king] expenditures resulting in in-kind contributions . . . in excess of contribution limits." There is no allegation that DSA's individual donors exceeded their contribution limits in providing funds to DSA, and petitioner conceded as much before the BOE. In contrast, the plain language of Election Law § 14-126 (2) penalizes a person "acting as or on behalf of a candidate or political committee" who "accepts" contributions in excess of applicable limitations, not those making contributions (emphasis added). This reading is consistent with the restorative remedies afforded under Election Law § 14-126 (2) requiring that an offending party "refund" any excess contribution amount, thus targeting those who receive and are consequently in possession of excess funds (see generally Matter of Lauder v Pellegrino, 153 AD3d 1114, 1118 [3d Dept 2017], lv dismissed 29 NY3d 1099 [2017]).FN1 It is significant that Election Law § 14-114 (1), which addresses contributions and receipt limitations, likewise [*4]distinguishes between "mak[ing]" and "accept[ing]" a contribution (Election Law § 14-114 [1] [former (b)]; see generally Matter of Kosmider v Whitney, 34 NY3d at 55, 61). "[W]hen different terms are used in various parts of a statute or rule, it is reasonable to assume that a difference between them is intended" (Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 63 [2013] [internal quotation marks and citation omitted]; see Matter of Perkins v Town of Dryden Planning Bd., 172 AD3d 1695, 1697 [3d Dept 2019]), and "[t]he Legislature is presumed to be aware of the distinction" between the terms used (People v Elmer, 19 NY3d 501, 507 [2012]; see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d at 62).

Moreover, even adopting petitioner's position that respondents failed to obtain proper authorization to raise funds on behalf of the subject candidates and that they accepted funds in excess of prescribed contribution limits within the meaning of Election Law § 14-126 (2), we note that the statute further requires that such have taken place "under circumstances evincing an intent to violate" the Election Law. Such a finding is unsupported here, as the record reveals respondents' attempts to obtain candidate authorization forms before a campaign treasurer raised concerns in this regard and confirmed with the BOE their understanding that those forms were not required. Moreover, one candidate at issue openly promoted her inclusion on DSA's slate and numerous others thereafter indicated that they had authorized DSA to act on their behalf during the relevant election cycle. Respondents also submitted tabulations of their expenditures and contribution allocations to the BOE — albeit without detailing the same per candidate — shortly after the election in November 2022. The foregoing thus fails to demonstrate respondents' intent to violate the Election Law as alleged. Accordingly, affording the language of Election Law § 14-126 (2) its "plain meaning" (Matter of Peyton v New York City Bd. of Stds. & Appeals, 36 NY3d 271, 280 [2020] [internal quotation marks and citation omitted]; see Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 194 AD3d 1310, 1315 [3d Dept 2021], affd 39 NY3d 201 [2023]; Matter of Independence Party State Comm. v New York State Bd. of Elections, 297 AD2d 459, 461 [3d Dept 2002]), we do not find it to be applicable to the facts presented here and, thus, Supreme Court erred in granting the petition and assessing penalties upon that basis.

Aarons, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.

ORDERED that the judgment is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: This distinction is further evidenced in Election Law § 14-126 (5) — although not the basis of the underlying factual allegations or penalties imposed here — which criminalizes not only "accept[ing]" an excess contribution but also "contribut[ing]," "aid[ing] or participat[ing] in the acceptance of" an excess contribution.