Clarke v Town of Newburgh (2025 NY Slip Op 00517)

Clarke v Town of Newburgh

2025 NY Slip Op 00517

Decided on January 30, 2025

Appellate Division, Second Department

Chambers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 30, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
CHERYL E. CHAMBERS
JANICE A. TAYLOR
DONNA-MARIE E. GOLIA, JJ.

2024-04378
 (Index No. 2460/24)

[*1]Oral Clarke, et al., respondents,
v
Town of Newburgh, et al., appellants.

APPEAL by the defendants, in an action pursuant to Election Law § 17-206, from an order of the Supreme Court (Maria S. Vazquez-Doles, J.), dated May 17, 2024, and entered in Orange County. The order denied the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint.

Troutman Pepper Hamilton Sanders LLP, New York, NY (Misha Tseytlin and Bennet J. Moskowitz of counsel), for appellants.
Abrams Fensterman, LLP, White Plains, NY (Robert A. Spolzino, Lisa Colosi Florio, David Imamura, and Steven Still of counsel), for respondents.
Letitia James, Attorney General, New York, NY (Barbara D. Underwood, Ester Murdukhayeva, Sandra Park, Lindsay McKenzie, Derek Borchardt, Edward Fenster, Vivian Costandy Michael, and Bethany Perskie of counsel), amicus curiae pro se.

CHAMBERS, J.

OPINION & ORDER
In a case of first impression, the central issue stated broadly is whether the contents of a resolution passed by a political subdivision pursuant to the New York Voting Rights Act (see Election Law § 17-206[7][b]), in which the political subdivision purported to affirm its intent to enact and implement a remedy to a potential voting rights violation, were sufficient to trigger the 90-day safe harbor provision of that statute. For the reasons set forth below, we affirm the Supreme Court's determination that the resolution failed to satisfy the statutory criteria to trigger the 90-day safe harbor provision, and, accordingly, the court properly denied the defendants' motion to dismiss the complaint.
I. Overview of the New York Voting Rights Act
The John R. Lewis Voting Rights Act of New York (hereinafter the NYVRA) was enacted in 2022 and went into effect on July 1, 2023 (see L 2022, ch 226). The NYVRA declares that it is the public policy of New York to "[e]ncourage participation in the elective franchise by all eligible voters to the maximum extent" and "[e]nsure that eligible voters who are members of racial, color, and language-minority groups shall have an equal opportunity to participate in the political processes of the state of New York, and especially to exercise the elective franchise" (Election Law § 17-200[1], [2]). It provides that "all statutes, rules and regulations, and local laws or ordinances related to the elective franchise shall be construed liberally in favor of (a) protecting the right of voters to have their ballot cast and counted; (b) ensuring that eligible voters are not impaired in registering to vote, and (c) ensuring voters of race, color, and language-minority groups have equitable access to fully participate in the electoral process in registering to vote and voting" (id. § 17-202).
The NYVRA prohibits any "political subdivision" in New York, which includes towns in New York, from "us[ing] any method of election, having the effect of impairing the ability of members of a protected class to elect candidates of their choice or influence the outcome of elections, as a result of vote dilution" (id. § 17-206[2][a]). The statute provides that a violation of this provision of the NYVRA may be established, inter alia, by a showing that a political subdivision uses "an at-large method of election," and "either . . . (A) voting patterns of members of the protected class within the political subdivision are racially polarized; or (B) under the totality of the circumstances, the ability of members of the protected class to elect candidates of their choice or influence the outcome of elections is impaired" (id. § 17-206[2][b][i][A]-[B]).
An aggrieved person may file an action in the Supreme Court against a political subdivision alleging a violation of this provision of the NYVRA (see id. § 17-206[4]). Upon finding a violation, the court shall implement appropriate remedies, which may include, but are not limited to, the specific remedies listed in the NYVRA (see id. § 17-206[5]). The proposed remedies listed in the NYVRA include implementing a "district-based method of election" (id. § 17-206[5][a][i]), implementing an "alternative method of election" (id. § 17-206[5][a][ii]), such as "ranked-choice voting, cumulative voting, [or] limited voting" (id. § 17-204[3]), eliminating "staggered elections so that all members of a governing body are elected on the same date" (id. § 17-206[5][a][iv]), or "reasonably increasing the size of the governing body" (id. § 17-206[5][a][v]).
Before commencing a judicial action against a political subdivision pursuant to the NYVRA, a prospective plaintiff must send the political subdivision a letter "asserting that the political subdivision may be in violation of this title" (id. § 17-206[7]). Such a letter is referred to in the statute as a "NYVRA notification letter" (id.) The NYVRA notification letter must "specify the potential violation or violations alleged and shall contain a statement of facts to support such allegation" (id.). A prospective plaintiff must not commence a judicial action against the political subdivision within 50 days of sending the NYVRA notification letter (see id. § 17-206[7][a]).
Before receiving such a letter, or within the 50-day period after the mailing of such a letter, the political subdivision may pass a resolution affirming the following: "(i) the political subdivision's intention to enact and implement a remedy for a potential violation of [the NYVRA]; (ii) specific steps the political subdivision will undertake to facilitate approval and implementation of such a remedy; and (iii) a schedule for enacting and implementing such a remedy" (id. § 17-206[7][b]). If the political subdivision passes such a resolution, referred to in the statute as a "NYVRA resolution," then the political subdivision shall have a safe harbor period of 90 days after passage "to enact and implement such remedy," during which a prospective plaintiff may not commence an enforcement action against the political subdivision (id.). When the governing body of the political subdivision either "lacks the authority" or "fails to enact or implement a remedy identified in a NYVRA resolution" within 90 days after passage of the NYVRA resolution, it must follow specific procedures to submit a "NYVRA proposal" to the Civil Rights Bureau of the Office of the New York State Attorney General for its approval (id. § 17-206[7][c][i]).
A political subdivision that has passed a NYVRA resolution may enter into an agreement with a prospective plaintiff to extend the safe harbor period for an additional 90 days (see id. § 17-206[7][d]). Such an agreement must include a requirement that the political subdivision shall either enact and implement a remedy or submit a NYVRA proposal to the Civil Rights Bureau of the Office of the New York State Attorney General (see id.).
Against the backdrop of this statutory scheme, we turn to the case before us.
II. Facts Relevant to the Instant Appeal
The Town of Newburgh is a political subdivision in Orange County, with a population of approximately 32,000. The Town Board of the Town of Newburgh (hereinafter the Town Board) is the Town's legislative and policymaking authority, comprised of five individuals—a Town Supervisor and four other members of the Town Board—all of whom are chosen through at-large elections. The Town Supervisor serves a two-year term and the four other members serve staggered four-year terms, such that every two years two seats on the Town Board are on the ballot.
On January 26, 2024, a law firm representing the plaintiffs sent the Town a NYVRA notification letter, alleging that the Town's use of an at-large method for electing the members of the Town Board violated the NYVRA by diluting the votes of Hispanic and African-American voters. The letter asserted, inter alia, that the Town had never "elected an African American or Hispanic candidate to Town office, despite the fact that African Americans and Hispanics represent 14.6% and 23.6% of the Town's population respectively." The letter threatened legal action if the [*2]Town did not voluntarily cure its violation of the NYVRA and expressed a willingness to "work with the Town to bring it into compliance" with the NYVRA.
On March 15, 2024, the Town Board held a special meeting and adopted a resolution (hereinafter the March 2024 resolution). The March 2024 resolution directed the Town Supervisor and the attorney for the Town to work with lawyers to "determine whether any potential violation of the NYVRA may exist and to evaluate potential alternatives to bring the election system into compliance with the NYVRA should a potential violation be determined to exist" and to report such findings and evaluation to the Town Board within 30 days. The March 2024 resolution noted that the Town would be "availing itself of the 'Safe Harbor Provision' under the NYVRA." The March 2024 resolution further stated that "[i]f, after considering the findings and evaluation and any other information that may become available to the Town . . . the Town Board concludes that there may be a violation of the NYVRA, the Town Board affirms that the Town intends to enact and implement the appropriate remedy(ies)." The March 2024 resolution further provided that, in the event the Town Board finds that "there may be a violation of the NYVRA," the Town Board would cause a proposal of the selected remedy or remedies to be prepared and submitted to the Town Board within 10 days "of the Town Board's finding of the potential violation," would hold at least two public hearings within 30 days of the presentation of the proposal, and thereafter would complete and submit the proposal to the Civil Rights Bureau of the Office of the New York State Attorney General.
On March 26, 2024, the plaintiffs commenced this action against the Town and the Town Board alleging vote dilution in violation of Election Law § 17-206(7). The complaint alleged that the March 2024 resolution did not comply with the criteria for a NYVRA resolution pursuant to Election Law § 17-206(7) and therefore was insufficient to trigger the 90-day period set forth in that subdivision of the NYVRA during which a plaintiff is barred from commencing an action.
On April 8, 2024, the Town Board adopted a new resolution in response to this action, suspending the Town Board's schedule for implementing any remedy pending a determination from the Supreme Court as to whether the March 2024 resolution complied with the NYVRA.
On April 16, 2024, in lieu of an answer, the defendants moved pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint, contending that the March 2024 resolution complied with Election Law § 17-206(7) and that the action was brought prematurely before the 90-day safe harbor period had lapsed. In an order dated May 17, 2024, the Supreme Court denied the motion. The defendants appeal.
III. Analysis
In determining whether the Town Board's March 2024 resolution satisfies the criteria of an NYVRA resolution such that it triggers the 90-day safe harbor, our analysis begins as always with the statutory text, as this is the "clearest indicator of legislative intent" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (id., quoting Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208).
We examine each of the statute's three requirements for an NYVRA resolution: first, that the resolution affirm "the political subdivision's intention to enact and implement a remedy for a potential violation of [the NYVRA];" second, that it set forth "specific steps the political subdivision will undertake to facilitate approval and implementation of such a remedy;" and third, that it set forth "a schedule for enacting and implementing such a remedy" (Election Law § 17-206[7][b]).
A. "Intention to enact and implement a remedy"
As the Supreme Court properly determined, the Town's resolution failed to satisfy the first of the three criteria for a NYVRA resolution, which required the Town to "affirm[ ]" its "intention to enact and implement a remedy for a potential violation" of the NYVRA (id. § 17-206[7][b]). The plain language of the statute requires an expression of an unconditional intention to enact and implement a remedy, not a conditional one (see id.). Certainly, had the Legislature wanted to explicitly carve out room for political subdivisions to make their intention conditional, it could have done so (see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 62).
Our reading of the statutory language is further buttressed by the explicit directive that the NYVRA must be "construed liberally in favor of . . . ensuring voters of race, color, and language-minority groups have equitable access to fully participate in the electoral process" (id. § 17-202). [*3]Moreover, a mere equivocal commitment to implementing a remedy is inconsistent with the NYVRA's stated purpose of ensuring that voters who are members of minority groups "shall have an equal opportunity to participate in the political processes" (id. § 17-200[2]).
Here, the Town affirmed only a conditional intent to enact and implement a remedy, "[i]f, after considering the findings and evaluation and any other information that may become available to the Town . . . the Town Board concludes that there may be a violation of the NYVRA." The conditional nature of the March 2024 resolution failed to trigger the 90-day safe harbor period.
The defendants urge that this interpretation of the NYVRA overlooks the significance of the word "potential" in the statute's provision requiring that an NYVRA resolution "affirm[ ]" a political subdivision's "intention to enact and implement a remedy for a potential violation" of the NYVRA (id. § 17-206[7][b]). In addressing this contention, we agree with the Attorney General's assertion that the use of the phrase "potential violation" (see id.§ 17-206[7]) means that no court has determined that an actual NYVRA violation has occurred. The defendants argue further that the Legislature would have used the phrase "alleged violation" to convey this intended meaning. We disagree and conclude that, when analyzed within the context of the legislation itself, the wording "potential violation" refers to the possibility or risk that a violation has occurred, whether or not any formal allegation has been made. We note further that the defendants' focus on the absence of the word "alleged" ignores the fact that an NYVRA resolution may be passed sua sponte by a political subdivision to address a potential violation, even before any allegation of a violation is made (see id.). Consequently, the Legislature's apparent intent was for political subdivisions to take proactive measures to ensure that their election procedures are fair and to prevent vote dilution.
Indeed, the defendants' main argument would rewrite the text of the statute. The defendants contend that the NYVRA only requires the Town Board to affirm an intent to implement a remedy "if the necessary conditions exist," that is, "if the Town Board determines that the prospective plaintiff has set forth a NYVRA violation." The defendants' interpretation, in effect, would move the word "potential" in the statute so that it modifies the word "intention" instead of the word "violation." In the defendants' view, the Town need only express a possible intention, if the right conditions are met, to enact and implement a remedy. There is no basis for this argument.
Notably, the defendants' position is inconsistent not only with the statute itself, but also with the wording of the March 2024 resolution that the defendants passed. The defendants contend that the Town should be given "latitude to investigate potential claims before blindly committing to remedying a problem that may not exist." However, the March 2024 resolution passed by the Town Board never requires the Town to determine definitively whether a violation exists or not. The March 2024 resolution directs the Town Supervisor and attorneys to determine only whether a violation "may" exist. The March 2024 resolution provides for next steps if the "Town Board concludes that there may be a violation of the NYVRA" (emphasis added) or makes a "finding" of a "potential violation" (emphasis added). In effect, at the end of the Town's 30-day investigation, if the Town unilaterally decides that there is a potential violation of the NYVRA, the Town will be in the same place as it was when it started, tasked with formulating a remedy to the "potential violation."
Furthermore, the defendants' position, that only a conditional commitment to act is required, would so distort the statute as to make the safe harbor provision pointless. Under the defendants' interpretation of the safe harbor provision of the NYVRA, the plaintiffs would be required to wait a full 90 days before commencing an action, even if the defendants decided within the first 30 days to take no action to remedy the alleged NYVRA violation. The legislation provides no basis for this interpretation.
The defendants further contend that the NYVRA is meant to allow a political subdivision time to investigate a prospective plaintiff's allegations before committing to a remedy. However, the statute already provides such an opportunity for investigation by allowing a political subdivision a full 50 days to respond to a prospective plaintiff's NYVRA notification letter (see Election Law § 17-206[7][a]). Moreover, the Governor's Memorandum accompanying the bill jacket for L 2022, ch 226, reflects that the effective date of the law was postponed for more than a year to give the state and localities the opportunity to address challenges to the law's implementation (see Governor's Approval Mem, Bill Jacket, L 2022, ch 226 at 6).
Nor is there any merit to the defendants' contention that only the second, "additional" 90-day safe harbor imposes any kind of unconditional obligation to act (see Election Law § 17-206[7][d]). When viewed as a whole and in relation to one another, the three safe harbor periods set [*4]forth in the NYVRA are clearly intended, first, to provide political subdivisions with 50 days to investigate allegations of potential violations and to develop a plan to remedy them; second, to provide 90 days to enact and implement a remedy; and, third, to provide an "additional" 90 days, upon agreement and as needed, when more time is necessary to complete the enactment and implementation of the remedy (see id. § 17-206[7][a]-[d]).
B. "[S]pecific steps" to "facilitate approval and implementation" of a remedy and a "schedule for enacting and implementing such a remedy"
The Supreme Court also properly determined that the March 2024 resolution failed to satisfy the second and third criteria for a valid NYVRA resolution, as it failed to identify any specific remedy that the Town Board intended to implement and therefore failed to set forth either "specific steps" or a "schedule" for implementing any such remedy (Election Law § 17-206[b][ii], [iii]). While the March 2024 resolution purports to set forth a schedule for implementation of a remedy, the schedule is both conditional and contentless. The schedule is conditional because the March 2024 resolution provides that most of the steps need not be followed at all if the Town Board, in its own judgment, determines that no NYVRA violation has occurred. The schedule is contentless because the Town Board has provided deadlines without any specificity as to what is to be accomplished by those deadlines. For example, the March 2024 resolution sets a deadline for a written proposal to implement a remedy that has not been chosen, and it sets deadlines for public hearings on issues that have not been identified.
The plain language of the statute supports the Supreme Court's determination that a NYVRA resolution must specify the remedy or remedies to be enacted and implemented. This is made clear by paragraph (c) of subdivision 17-206(7), which specifies the procedures for when a political subdivision's governing body either "lacks the authority" to enact or implement or "fails" to enact or implement "a remedy identified in a NYVRA resolution" within 90 days after passage of the NYVRA resolution (see Election Law § 17-206[7][c]). The only reasonable interpretation of this language is that a NYVRA resolution is expected to identify a particular remedy. Here, the March 2024 resolution fails to identify any remedy and, therefore, fails to set forth any meaningful steps or a schedule for enacting or implementing any such remedy.
The legislative history of the statute also supports the conclusion that a valid NYVRA resolution must express an unequivocal intent to implement a specific remedy. The purpose of the NYVRA's safe harbor provision, as articulated by the legislator sponsoring the bill, is to enable political jurisdictions to "make necessary amendments to proposed election changes without needing to litigate in court" (Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 226 at 8). Such a purpose would not be advanced if a political subdivision were permitted to only express an abstract intent to implement a hypothetical, unidentified remedy.
This interpretation of the safe harbor provision is also consistent with the statutes of other states, upon which the NYVRA was modeled. The Senate Introducer's Memorandum in Support for the NYVRA reflects that New York's law was intended to "build[ ] upon the demonstrated track record of success" of California's and Washington's recent voting rights statutes (id. at 9). The California Voting Rights Act "prohibits an at-large method of election 'that impairs the ability of a protected class' . . . 'to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class'" (Pico Neighborhood Assn. v City of Santa Monica, 15 Cal 5th 292, 306, 534 P3d 54, 59, quoting Cal Elec Code § 14027 [citations omitted]). The California statute requires a prospective plaintiff to provide written notice to a political subdivision before commencing an action (see Cal Elec Code § 10010), and if a political subdivision passes a resolution within 45 days of such notice, "outlining its intention to transition from at-large to district-based elections, specific steps it will undertake to facilitate this transition, and an estimated time frame for doing so," then the prospective plaintiff may not commence suit for 90 days from the date of passage of such resolution (id. § 10010[e][3][A]; see § 10010[e][3][B]). Similarly, the Washington Voting Rights Act provides that "no method of electing the governing body of a political subdivision may be imposed or applied in a manner that impairs the ability of members of a protected class or classes to have an equal opportunity to elect candidates of their choice as a result of the dilution or abridgment of the rights of voters who are members of a protected class or classes" (RCW 29A.92.020; see Portugal v Franklin County, 1 Wash 3d 629, 634-635, 530 P3d 994, 1000). Washington's statute permits a political subdivision to voluntarily "change its electoral system . . [*5]. to remedy a potential violation" (RCW 29A.92.040[1]) or to implement a remedy prompted by a "plausible violation" alleged by a voter (id. § 29A.92.070[2]). In the latter case, if a court "concludes that the political subdivision's remedy complies with RCW 29A.92.020, an action under this chapter may not be brought against that political subdivision for four years" (id. § 29A.92.070[3]). Thus, both California's and Washington's statutes clearly intend for a political subdivision to implement a specific and concrete remedy in response to a potential voting rights violation in order to trigger a safe harbor from the commencement of litigation. This further underscores that the New York Legislature, having expressly modeled New York's statute upon the examples set by California and Washington, likewise intended for New York's statute to require a similar level of commitment to a specific remedy.
The defendants' contention that requiring such specificity would be too burdensome is unavailing. The potential remedies for vote dilution caused by at-large elections have been identified and discussed in case law, statutes, and scholarly literature. "Federal courts 'have strongly preferred single-member districts' as the remedy" for vote dilution (Portugal v Franklin County, 1 Wash 3d at 638, 530 P3d at 1001, quoting Growe v Emison, 507 US 25, 40). Other potential remedies include alternative voting methods such as cumulative voting, whereby a "voter receives as many votes as there are candidates to elect, but may cast multiple votes for a single candidate" (Portugal, 1 Wash 3d at 640, 530 P3d at 1002), limited voting, whereby a "voter receives fewer votes than there are candidates to elect" (id.), or ranked-choice voting, whereby a "voter ranks candidates in order of preference, and votes are transferred to lower-ranked candidates who are not elected on first-place votes if a majority is not reached" (id.; see Pico Neighborhood Assn. v City of Santa Monica, 15 Cal 5th at 317 nn 6-8, 534 P3d 66 nn 6-8; see also Missouri State Conference of the N.A. for the Advancement of Colored People v Ferguson-Florissant Sch. Dist., 219 F Supp 3d 949, 957 [ED Mo]). Another potential remedy is to eliminate staggered terms, which "can have a dilutive effect on a population's voter participation" (United States v Euclid City Sch. Bd., 632 F Supp 2d 740, 757 [ND Ohio]; see Collins v City of Norfolk, Va., 883 F2d 1232, 1236 [4th Cir]). All of the above remedies, and others, are expressly listed in the NYVRA (see Election Law §§ 17-204[3]; 17-206[5]). In light of the foregoing, the defendants' contention that it would be practically impossible to identify a viable remedy in the time allotted by the NYVRA rings hollow.
IV. Conclusion
In short, the defendants' interpretation of the NYVRA seems to prioritize prolonging the process, potentially to strategize their position, over the underlying intent and purpose of the statute. They interpret the NYVRA as requiring a political subdivision to do nothing more than pass a resolution reciting some of the language from the statute after spending 50 days deciding whether it is worthwhile to do so. Then, after passage of a contentless resolution that commits a political subdivision to do nothing unless it unilaterally decides that a NYVRA violation "may" exist, a political subdivision enjoys a 90-day immunity from suit, regardless of whether it does anything further and even when it has conclusively decided to take no further action. These positions are irreconcilable with both the text and the purpose of the NYVRA. For all of the foregoing reasons, the Supreme Court properly determined that the defendants failed to satisfy the safe harbor provision of Election Law § 17-206(7) and properly denied the defendants' motion to dismiss the complaint.
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the order is affirmed.
LASALLE, P.J., TAYLOR and GOLIA, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court